# Richmond

STATE-PLANTERS BANK AND TRUST COMPANY OF RICHMOND,
VIRGINIA, EXECUTOR AND TRUSTEE OF THE ESTATE
OF EMILIE HANEWINKLE V. COMMON-
WEALTH OF VIRGINIA.

January 8, 1940.

Record No. 2221.

Present, Holt, Hudgins, Gregory, Browning, Eggleston
and Spratley, JJ.

*J. Vaughan Gary,* for the plaintiff in error.

*Abram P. Staples, Attorney-General,* and *Joseph L. Kelly, Jr., Assistant Attorney-General,* for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

The question presented in this case is whether or not Emilie Hanewinkle was a resident of this State, within the

meaning of its tax laws, when she died in 1938. If her legal domicile was in Virginia, her estate was subject to an assessment for State inheritance taxes,—if not, the assessment was erroneous.

Miss Hanewinkle at one time resided in this State, with her domicile in the city of Richmond. She was a spinster of considerable means and without any family ties requiring her residence at any specific place. More than thirty years ago, perhaps forty, she left Virginia and went to Rome, Italy. During this period, she returned to America four times. She had no mansion house or fixed place of abode in Virginia. During her trips to America, she visited Richmond, staying at the Jefferson Hotel. On her last visit, she registered at that hotel on December 1, 1934, as "Miss E. Hanewinkle, Rome, Italy." She left the hotel on April 9, 1935, and returned to Italy. She died in Rome, on January 3, 1938, and was there buried.

The State-Planters Bank and Trust Company of Richmond, Virginia, acted as financial advisor of Miss Hanewinkle and represented her in handling the collection and remittances of the income from her securities. She carried on a correspondence with this bank and its officers, which correspondence dealt with her business affairs in America, her physical and financial condition, and her opinion of peoples and nations.

Evidence of her intentions with reference to her domicile is presented through this correspondence and her conversations with the officers of the above bank and with her relatives. The letters disclose that she stayed at the same hotel or apartment in Rome year after year; that she made occasional trips to Paris and to other parts of Europe; that she was much displeased with the political and economic system of this country; that she felt she could live much more cheaply in Italy than in this country; and that she was a woman of independent thought and firm views with both the courage and capacity to express them.

The several letters in evidence contain the following expressions: On November 8, 1927, she wrote: "The fact

was I left Rd. on account of the high taxes (over 30 years ago) * * *."; on June 9, 1928: "I never expect to reside in Richmond (unless most unforeseen circumstances occur) so I think I will go back to Maryland before the year ends and remove my stocks, etc. back to Balto. * * * I planned to come over to U. S. for a few months this year, but I doubt if I ever cross the ocean again (unless I become miraculously better this summer—?)" on April 26, 1932: "I am only thankful I can be in Europe, where nurses, doctors, and taxes, board, lodging and general expenses are so much less than in America."; on January 16, 1934: "As I wrote, I had intended coming to U. S., but, I am such an invalid still that I doubt exceedingly if I am ever able to cross the ocean. * * * I know living in U. S. would be impossible for me."; and January 24, 1934: "If I come to U. S. I could not possibly have a *home* there on $2,400,—per annum as I find it impossible even to live here, now on this sum. * * * If I were younger I would give up American citizenship in order to live in some more honorable country than U. S. All I can do now honestly is to swear to support the 'Constitution' (when I get my passport here—) though in U. S. A. it is completely ignored and cast down!"

On one of her visits to America, in a conversation with the vice-president of the State-Planters Bank and Trust Company, she stated that she did not like the U. S.; that she preferred to live in Rome; that practically all of her close friends were abroad; and that she was anxious to get back to Italy to be near to the physicians of that country, who knew her medical needs better than any other doctors in the world.

She owned no real estate in Virginia. Her tangible personal property, consisting of household furniture, paintings, clothing, etc., was in Rome. She had approximately $125 worth of personal property, termed bric-a-brac, in storage in Richmond, but she had never been assessed there for taxation on any tangible or intangible property, nor for poll taxes.

Her Federal tax returns were filed with the United States Department of Internal Revenue in Baltimore, Maryland, a filing office for nonresident returns.

On January 5, 1935, while in Richmond, Virginia, Miss Hanewinkle made, executed and acknowledged her last will and testament. The preamble to the will reads: "I, Emilie Hanewinkle, (formerly Hanewinckel) of Richmond, Virginia, * * *." This will was probated on January 7, 1938, in the Chancery Court of the city of Richmond, as that of a non-resident of the State of Virginia having estate in the said city. The State-Planters Bank and Trust Company of Richmond, Virginia, duly qualified as executor and trustee of the estate.

The Department of Taxation of Virginia assessed the estate with state succession or inheritance taxes amounting to $1,505.24. The plaintiff in error as executor and trustee promptly applied to the Circuit Court of the city of Richmond for relief from the assessment on the ground that its testate was a nonresident of the State of Virginia and that the assessment was therefore erroneous, illegal and void.

The trial court, after consideration of the foregoing evidence introduced by the plaintiff in error, none having been offered by the Commonwealth, denied relief.

The Commonwealth contends that, even admitting Miss Hanewinkle attempted or desired to give up her residence and domicile in Virginia, the evidence is insufficient to show that she had acquired a domicile in Rome.

It is admitted that under the inheritance tax laws of Virginia the situs for the taxation of intangible personal property is the permanent residence or domicile of the owner. Virginia Tax Code, 1936, section 120. It should not be necessary here to enter into any extensive discussion as to what constitutes such residence as amounts to domicile. That question has been ably and exhaustively considered in numerous Virginia cases. *Pendleton* v. *Com.*, 110 Va. 229, 65 S. E. 536; *Cooper's Adm'r* v. *Com.*, 121 Va. 338, 93 S. E. 680; *Bowen* v. *Com.*, 126 Va. 182, 101 S. E. 232; and *Talley* v. *Com.*, 127 Va. 516, 103 S. E. 612. See also,

*Long* v. *Ryan,* 30 Gratt. (71 Va.) 718; *Guilfoil* v. *Hayes,* 169 Va. 548, 194 S. E. 804; and *State of Texas* v. *State of Florida,* 306 U. S. 398, 59 S. Ct. 563, 83 L. Ed. 817.

We do not understand that the parties disagree as to the following legal rules and principles enunciated in the foregoing cases, but that they do disagree as to the application of these principles to the facts before us.

■ Domicile and residence are not words of equivalent meaning. One may have a residence at a place without having his domicile there. A person may have more than one residence, while he can have only one domicile,—a permanent place of abode—at the same time, and at least for the same purpose.

■ Domicile means more than residence. Domicile is residence at a particular place, accompanied by intention to remain there for an unlimited time. Both residence and intention to remain there must concur to constitute domicile. Proof of the intention may be positive or presumptive.

■ Mere change of place or absence from a fixed home does not work a change of domicile. Until a new domicile is acquired, the old one remains, and whenever a new domicile is alleged, the burden rests upon the party alleging it.

■ If, however, a person is abiding at a particular place and while so abiding forms an intention to make it his home permanently, or for an indefinite period, and continues to remain there in pursuance of such intent, he thus acquires a new domicile.

■ The intent of the person is often in question. It must frequently be determined from the declarations and conduct of the person, in the light of the attending circumstances. When the evidence is conflicting, the opposing facts must be balanced one against the other. Slight circumstances must often decide the question. The solution of the question depends upon the preponderance of the evidence in favor of one place or the other. All acts indicative of the purpose must be carefully scrutinized. *Cooper's*

*Adm'r* v. *Com., supra; Bowen* v. *Com., supra; Talley* v. *Com., supra.*

In *Guilfoil* v. *Hayes, supra,* in dealing with the character of the intention required to effect a change of domicile, we cited the case of *Com.* v. *Rutherfoord,* 160 Va. 524, 169 S. E. 909, 90 A. L. R. 348, which quoted with approval the following language from *Williamson* v. *Osenton,* 232 U. S. 619, 34 S. Ct. 442, 58 L. Ed. 758:

" 'The essential fact that raises a change of abode to a change of domicile *is the absence of any intention to live elsewhere* (Story, Conflict of Laws, section 43) ; or, as Mr. Dicey puts it in his admirable book, *"the absence of any present intention of not residing permanently or indefinitely in"* the new abode. Confl. L. (2d Ed.) 111.' "

The evidence before us shows that Miss Hanewinkle undoubtedly intended to give up her abode and residence in Virginia. In pursuance of that intention, she physically became a resident of a foreign country. Our inquiry is reduced to a consideration as to whether she intended to adopt that foreign country as her domicile,—her permanent home and residence. The evidence strongly supports the presumption that she did. She remained absent from this country between thirty and forty years, returning only four times within that period for brief visits. Rome, to her, was more than the mere headquarters of a tourist. She lived there for many years in the same building. There she was in close contact with the only persons whom she had the opportunity to make her friends.

She disliked the government and policies of her native country and, outside her few family ties, had no interest in this country other than the value, security and return from her investments here. She was pleased to avoid its taxes and to reside in a country where costs of living were less. She said, in effect, that she never expected to reside in Richmond again, if she could avoid doing so. Even when the condition of her health indicated that she did not have much longer to live, she chose to remain and died in the country of her choice and adoption. She did not ask that

her body be removed to this country. It is the experience of mankind that a person prefers to spend his last days in the place which he considers his home.

Miss Hanewinkle doubtless retained her citizenship for some advantage she thought it gave her in Italy rather than from a sense of pride in her native country. The status of a person for taxation is decided not by citizenship but by domicile. *Pendleton* v. *Com., supra.*

The fact that she described herself in her last will and testament as being of Richmond is not controlling. It may have been merely a matter of form or of description. At the very time she wrote the will, she was registered at a Richmond hotel, with her address given as Rome. Three months thereafter she returned to Rome. It may well have been that the language used in the will was used in contemplation of the fact that the executor and trustee named in her will was a Virginia corporation which would administer her estate in Virginia.

It is not the motive which causes the desire to change a domicile that is controlling, but rather the desire itself, regardless of the merits of the motive. In this case, the acts and conduct of Miss Hanewinkle are directly in accord with her declarations. She resided in Rome, in pursuance of her expressed reasons and purposes. She expressly disclaimed any intention to return to America to reside, and in her later years was extremely doubtful that she could even return for a visit.

A stay of forty years in a place which has been acclaimed as most satisfactory to one's health and habits of living, with only occasional absences therefrom, and the possession there of one's own furniture and "household effects," indicates that the stay is intended as more than a temporary stay or sojourn at such place. Where such an abode continues until one's death, it is fairly conclusive, in the absence of any expressed desire or intention to reside elsewhere, that the place so selected is intended as the permanent residence.

██ Miss Hanewinkle's major interests in life were centered in Rome. It was not only, in point of fact, her actual residence and headquarters, but it was, in point of interest and attachment and for the general purposes of life, the only home she had. Such facts and circumstances are of the essence of domicile. *State of Texas* v. *State of Florida, supra.*

██ A careful consideration of the whole evidence convinces us that Miss Hanewinkle abandoned her domicile in Richmond, and established a new domicile of choice in Rome, Italy.

The conclusion thus reached makes it unnecessary to discuss other grounds of error assigned.

The judgment of the Circuit Court will be reversed, the estate of Miss Hanewinkle exonerated from the payment of the taxes erroneously assessed against it, and the case remanded to the trial court, with direction to enter such further judgment as may be necessary to accord with the views herein expressed.

*Reversed.*