# Wytheville

BERTA OBENSHAIN, ET AL. V. RICHARD H. HEYSER'S ADMRS.

June 8, 1942.

Record No. 2544.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Eggleston
and Spratley, JJ.

The opinion states the case.

*Robert B. Davis* and *F. H. Combs*, for the appellants.

*H. Claude Pobst* and *Marjorie Coleman*, for the appellees.

HOLT, J., delivered the opinion of the court.

Richard H. Heyser was killed in an automobile accident in Florida on January 13, 1940. He died intestate, leaving to survive him Elizabeth W. Heyser, then made a widow. There were no children. The net value of his personal estate was about $22,000, all of which goes to his widow under our statute of distribution.

Under the Kentucky statute of distribution, one-half of the estate goes to the widow and of the remainder, one-fourth goes to his maternal grandmother and one-fourth to his six paternal uncles and aunts, or their descendants—four of them taking a one-twenty-fourth interest each, two paternal first cousins taking a one-forty-eighth interest each, and six paternal first cousins taking a one one-hundred-forty-fourth interest each.

We do not understand that there is any dispute about those who are to take and their interest. When we have determined the domiciliary habitation of the intestate, we will have determined also the interest, if any, of these claimants.

The widow, Elizabeth W. Heyser, and the Pikeville National Bank & Trust Company of Pikeville, Kentucky, were appointed intestate's administrators by the clerk of the Circuit Court of Buchanan county. Not being advised of their duties in the premises, they sought the aid of that court and have asked it, in a declaratory judgment, to tell them what to do. The widow, in her own right, answered and contended that her husband at the time of his death was legally domiciled in Buchanan county. Four uncles and aunts filed answers to the same effect. The grandmother and one of the aunts, challenging the correctness of this claim, said that decedent was in fact a citizen of and domiciled in Pike county, Kentucky.

Decedent was born in June, 1911, at Elkhorn in McDowell county, West Virginia. While he was quite young, his family moved to Majestic, Pike county, Kentucky, and lived there until the death of his father in 1926, when they moved to Pikeville, Kentucky, and lived there in a rented home for two or three years, after which the mother purchased a home. That home he inherited from her and was its owner when he died.

In November, 1935, he married Elizabeth Whitt. She was born in Kentucky but when about two years old went to live with her uncle and aunt, Mr. and Mrs. W. H. Banner, who lived at or near Grundy, Buchanan county, Virginia. When grown, she returned to Kentucky and taught school at Stone in that State. They were married on November 9, 1935. He continued to live at Pikeville and she joined him there about the first of February, 1936. They lived with his mother until August first of that year, when they moved into an apartment of their own. In October, 1936, he went to Florida; she continued to teach. He remained in Florida until March, 1937, when an uncle died as a result of an automobile accident. He came back to his uncle's funeral.

About two weeks thereafter his mother died in a Roanoke hospital. Heyser then went back to Florida and stayed there for a few days to settle his business affairs when he rejoined his wife at Pikeville, where they lived in his mother's house until November, 1937, when they both went back to Florida, returning about April 1, 1938, in a trailer, to his uncle's home at Grundy. They lived in this trailer until the husband secured a job at the Dismal Country Club. His contract with the club was in writing and bears date June 16, 1938. He was to keep the golf course in order, furnish caddies, etc., and was held generally responsible for conditions on the course and in the clubhouse, all at a stated salary. He had the exclusive right to sell meals, confections, etc., upon the club grounds and was given control of the kitchen. This contract ran for an indefinite time but could be terminated by either party upon thirty days' written notice.

About the middle of November, 1939, they left Grundy and went to Florida, and it was there that Mrs. Heyser's husband was killed in January, following.

From this odyssey it will be seen that he, too, could not rest from travel.

Mr. J. P. Hobson was his lawyer. At a conference in the summer of 1939 and after Heyser had taken up his duties with the Country Club at Grundy, Mr. Hobson told him that he should establish a permanent residence somewhere, one of the reasons being that tax rates and the manner of taxation varied in various States. Heyser said that he wanted to do this but that before reaching a definite conclusion he wanted to check up on the tax laws of Virginia and of Florida.

Miss Leona McConnell, who was law clerk for Mr. Hobson, said that just before Heyser went to Florida on the occasion of his last visit he told her how low taxes were in Buchanan county.

Mr. J. S. Miller, an insurance agent, had been writing insurance for him for many years. It became necessary to renew an automobile insurance policy in September, 1939.

The United States Fidelity & Guaranty Company wrote to Miller, saying:

"Since you have shown the insured's address as Grundy, Virginia, it will be necessary for us to have the policy counter-signed in that State."

After a talk with Heyser, Mr. Miller wrote to his company, saying:

"We have talked to Mr. Heyser today and he advises us that Pikeville, Kentucky, is his permanent address."

In February, 1939, Miss Minerva Green asked him why he was moving his household goods to Grundy. His answer was: "I never intend to move it back to Pikeville."

O. T. Hinton was anxious to rent the Pikeville home but told Heyser that he did not wish to rent it merely for temporary use. Heyser, answering, said that he could have it as long as he wanted it and that he did not expect to come back. This was after his mother's death.

Mrs. Grace Sisk talked with Heyser about renting it in April, 1939; this then occurred:

"* * * 'Dickie, I don't want to rent that house if you are coming back to Pikeville to live' and he says, 'I am not going to move back,' he says, 'We are living in Virginia, Billie and I are perfectly satisfied over there, and neither of us want to live in Pikeville.' And he went on to say, 'Neither of us will ever come back here to live.' With that, I told him I would take the house."

In the spring of 1939, Miss Mildred Charles, when driving with Heyser from Pikeville to Grundy, asked him if he would like to live in Pikeville again. He answered: "No, I don't intend to live here any more in Pikeville." And in that connection he said that he liked Grundy best of all places in which he had lived.

When moving his furniture, Barbara Horton, who lived in Pikeville, was talking with Heyser about the removal of his furniture to Grundy and asked him: "You ain't leaving, are you?" To which he answered: "Yes, I am going over there to live." But he said that he might have to come back sometime to live in Pikeville.

A. D. McClanahan, Commissioner of Revenue for

Buchanan county, went to Heyser in 1939 to inquire about a tax assessment. Heyser told him that he wished to be assessed, and he was assessed with his automobile and poll tax.

Wade H. Banner said that Heyser, upon the occasion of his last visit, said that he was going to Florida for some business reasons and was coming back to Grundy, and that when he came back he was going to try to buy some land on which to build a house. That attempt to purchase real estate fell through.

Mr. K. L. Arnold, vice president of the Pikeville bank, received a letter written by Heyser just before his death but received just after his death. He asked Arnold to find him a purchaser for his Pikeville home.

Thirty-one days before Heyser's death he applied for a certificate of title to the Division of Motor Vehicles at Richmond and in it stated that his home was in Grundy, Buchanan county, Virginia.

Heyser moved most of his furniture from Pikeville to Grundy together with his library, consisting of 500 books. He furnished the Club kitchen, and they lived in the clubhouse when he was last in Grundy. He made plans to build a house there; that plan fell through for he could not buy the land. He did not want to go back to Pikeville for those with whom he had come to associate were not in every respect all that they might have been. He was breaking away from his old life, which was not to be renewed except upon contingencies not then in contemplation.

For appellants, our attention is called to these facts:

Mr. Hobson made out his Federal income tax sometime before March 15, 1939. That income tax return was made out for Heyser as a citizen of Kentucky and returned to the collector at Louisville.

Norman A. Christmas was an insurance agent who wrote an automobile policy for Heyser in 1937, which was renewed from time to time, its last renewal being on June 23, 1939. In them Mr. Heyser's address was given as Pikeville, Kentucky.

Mr. John S. Miller had been writing insurance for Heyser

for many years. These policies were renewed from time to time. He had a talk with Heyser about the Fidelity & Guaranty policy and was asked this question:

Q. "And wishing to prefer you in the business, as he had always done, he says, 'Just put it in Pikeville' or something of that kind, isn't that about the way the matter was consummated?" A. "It was necessary, for me to be able to procure for him a policy, that he gave his residence in Kentucky, or Pikeville, Kentucky."

Mr. Hobson made out Mr. Heyser's Federal income tax and returned it to Louisville some time before March 15, 1939. With respect to the Federal income tax report, made before March 15, 1939, it made little difference whether that return and the tax due thereon was paid in Louisville or in Richmond; payment made in either place would have satisfied the government's claim. From the talk with Mr. Hobson in the summer of 1939, it appears that Heyser was hesitating between claiming Florida or Virginia as his place of residence. The evidence is ample to show that he did not intend to return to Kentucky.

Policies issued through Miller and Christmas were in later issues renewals. In such cases it is the custom of agents to copy statements in former policies and to send the renewals to the insured in advance that they might not lapse. It is a matter of common knowledge that they are seldom read, and in the instant case, Heyser doubtless wished to have these agents, who lived in Kentucky and represented their companies there, retain his business, and this because they were his friends.

[█] He had definitely abandoned citizenship in Kentucky. His associates and his associations were among the reasons which moved him. He and his wife were actually living in the clubhouse at Grundy although on a furlough and for business reasons they had gone to Florida. He undertook to be registered as a citizen of Grundy and to secure a lot there upon which to build. He had moved his furniture from his old home to his new one and was living there in the clubhouse. Immediately before his death he had written to Mr. Arnold to find a buyer for the Pikeville home. He was

under contract with the club at Grundy to serve it for an indefinite time. These facts, coupled with his repeated declarations, lead us without hesitation to the conclusion that at the time of his death Heyser was a citizen of Virginia and not of Kentucky.

Plainly men may change their domicile at their election. Heyser was born in West Virginia, and he and presumably his parents were citizens of that State. They moved to Kentucky and became domiciled there. By the same token he had the right to become a citizen of Virginia. There is nothing unusual about the fact that he finally settled in Grundy. There his wife's uncle, who had raised her, lived, and there he had secured congenial and apparently permanent employment. Nor is there anything unusual in the fact that he continued to visit Pikeville; it was only fifty-four miles away and in it was his old home, although he had no blood ties which bound him to that place.

The weight to be given to a chancellor's decree, based upon evidence of record, we had occasion to consider in *Shenandoah Valley Nat. Bank, Adm'r* v. *Lineburg, post,* page 734. It is not necessary that we repeat here what was said there.

No discussion of presumptions or of burden of proof is necessary. The conclusions which we have reached rest upon evidence and not upon presumption, and the burden of proof which the law has placed upon Mrs. Heyser she has successfully borne.

In the establishment of domicile, time is not of the essence. What is essential is the absence of any intention to live elsewhere.

A satisfactory discussion of this subject will be found in an opinion by Mr. Justice Spratley in *State-Planters Bank, etc., Co.* v. *Commonwealth,* 174 Va. 289, 6 S. E. (2d) 629. These are his conclusions:

"If, however, a person is abiding at a particular place and while so abiding forms an intention of making it his home permanently, or for an indefinite period, and continues to remain there in pursuance of such intent, he thus acquires a new domicile."

Further on it was said:

"In *Guilfoil* v. *Hayes, supra* [169 Va. 548, 194 S. E. 804], in dealing with the character of the intention required to effect a change of domicile, we cited the case of *Com.* v. *Rutherfoord,* 160 Va. 524, 169 S. E. 909, 90 A. L. R. 348, which quoted with approval the following language from *Williamson* v. *Osenton,* 232 U. S. 619, 34 S. Ct. 442, 58 L. Ed. 758:

" ' "The essential fact that raises a change of abode to a change of domicile *is the absence of any intention to live elsewhere* (Story, Conflict of Laws, section 43); or, as Mr. Dicey puts it in his admirable book, 'The absence of any present intention of not residing permanently or indefinitely in' the new abode. Confl. L. (2d Ed.) 111." ' "

See also *Long* v. *Ryan,* 30 Gratt. (71 Va.) 718; *Lindsay* v. *Murphy,* 76 Va. 428; *Howe* v. *Howe, ante,* page 111, 18 S. E. (2d) 294; and *McFarland* v. *McFarland, ante,* page 418, 19 S. E. (2d) 77.

One can have but one domicile, but he can change the situs at his election and as often as it pleases him, provided only that with each change there be the absence of any present intention of not residing permanently or indefinitely in the new abode.

*Affirmed.*