304 S.E.2d 20

**Eugenia M. LOTZ, Executrix, etc.**

v.

**Michael Peter ATAMANIUK.**

**No. 15711.**

Supreme Court of Appeals of West Virginia.

March 29, 1983.

Rehearing Denied July 5, 1983.

William C. Hollandsworth, Wheeling, for appellant.

Arch W. Riley & Arch W. Riley, Jr., Wheeling, for appellee.

HARSHBARGER, Justice:

The will of Linda Jean Atamaniuk, who died on April 15, 1978, was probated in Marshall County, West Virginia by her mother, Eugenia Lotz, who was named executrix and sole beneficiary. Linda's estranged husband, Michael Peter Atamaniuk, renounced the will and elected to claim his share of her estate as if she had died intestate.[1] Ms. Lotz sued, alleging that Atamaniuk was not entitled to share in Ms. Atamaniuk's estate because he was living in adultery at the time of his wife's death, and was thus barred from dower.[2] Atamaniuk answered that his wife was a resident of Ohio when she died, and he was electing to take his one-half statutory share of her personal property by Ohio Revised Code Ann. § 2107.39 (Page 1976). Ohio does not deny an adulterous spouse the right to elect against a will.

After a hearing, the trial judge decided that Linda Jean Atamaniuk was a resident of Ohio at the time of her death, and Lotz appealed.[3]

1. W.Va.Code, 42–3–1:
"When any provision is made in a will for the surviving wife or husband of the testator, such surviving wife or husband may, within eight months from the time of the admission of the will to probate, renounce such provision. If the will be contested, or the order admitting it to probate be appealed from, such renunciation may be made within two months of the final decision on such contest or appeal. Such renunciation shall be made either in person before the county court by which the will is admitted to probate, or by a writing recorded in the office of the clerk of such court, upon such acknowledgment or proof as would authorize a deed to be admitted to record. If such renunciation be made, or if no provision be made for such surviving wife or husband, such surviving wife or husband shall have such share in the real and personal estate of the decedent as such surviving wife or husband would have taken if the decedent had died intestate leaving children; otherwise the surviving wife or husband shall have no more of the decedent's estate than is given by the will."

2. W.Va.Code, 42–3–2:
"If a person make provision by will for his or her surviving wife or husband, such provision shall be construed to be in lieu and bar of dower and distributive share of the personalty in the estate of the deceased consort, and such provision, unless the same be renounced as provided in the preceding section [42–3–1], shall be all that such surviving wife or husband shall take of the estate of the deceased consort, unless it clearly appears from a construction of such will, and the attendant facts proper to be considered in connection with it, that the testator intended the surviving wife or husband to take the estate share of the personalty."

W.Va.Code, 43–1–19:
"If a husband or wife of his or her own free will leave his or her spouse and live in adultery and be not afterwards reconciled to, and live with, such spouse, or if a husband or wife shall voluntarily leave or abandon his or her spouse without such cause as would entitle such husband or wife to a divorce from the bond of matrimony or from bed and board, and without such cause and of his or her own free will be living separate and apart from such spouse at the time of the latter's death, such husband or wife shall be barred of dower in the estate of such spouse."

3. The Marshall County Commission had jurisdiction to admit Linda's will to probate. W.Va. Code, 41–5–4(b) and (c):
"The county court [commission] shall have jurisdiction of the probate of wills according to the following rules:

.    .    .    .    .

"(b) If he had no such house or place of residence, then in the county wherein any real estate devised thereby is situated; or

Linda and Michael were married in Marshall County in August, 1971, and lived together at their marital domicile there until September, 1977, when they separated. Their separation agreement provided that Michael would remain in their jointly owned home, and Linda leased an apartment in St. Clairsville, Belmont County, Ohio, for a year. Hearing testimony revealed that she had made several unsuccessful attempts to find an apartment in Wheeling; that her checking and savings accounts were at a Belmont County bank; that her automobile was registered in West Virginia, and she had a West Virginia driver's license. She died in Ohio Valley Medical Center in Wheeling, West Virginia on April 15, 1978. Her probated will was dated March 20, 1978, and began: "I, Linda Jean Atamaniuk, of St. Clairsville, Belmont County, Ohio, do make, declare and publish this as my Last Will and Testament."

When she died, her divorce suit against Michael in Marshall County Circuit Court was pending, and the parties here have stipulated that if Linda is found to have been a West Virginia resident, her grounds for divorce would bar her husband from taking his statutory share in her estate.

■ Initially, we recognize that:

A finding of fact made by a trial chancellor or by a trial court sitting in lieu of a jury will be given the same weight as a verdict of the jury and will not be disturbed by this Court on appeal unless the evidence plainly and decidedly preponderates against such finding. Syllabus Point 8, *Sanders v. Roselawn Memorial Gardens, Inc.*, 152 W.Va. 91, 159 S.E.2d 784 (1968). *Carey v. Campbell*, 170 W.Va. 541, 295 S.E.2d 32, 33 (1982).

"(c) If there be no real estate devised thereby, and the testator had no such house or place of residence, then in the county wherein he died, or in any county wherein he had any property at the time of his death; or ...."
West Virginia courts have jurisdiction to probate wills of people who have property here.

**4.** Mississippi refused to let a testatrix's domicile control her spouse's right of renunciation or statutory share in *Bolton v. Barnett*, 131 Miss.

■ Ms. Atamaniuk's domicile when she died, controls which state law applies to her will of her personal property, *White v. Tennant*, 31 W.Va. 790, 8 S.E. 596, 597 (1888). *Accord, Blatt v. Blatt*, 79 Colo. 57, 243 P. 1099, 1102, 57 A.L.R. 221 (1926); *Johnson v. LaGrange State Bank*, 8 Ill.Dec. 670, 50 Ill.App.3d 830, 365 N.E.2d 1056 (1977), *aff'd. and rev'd. in part*, 73 Ill.2d 342, 22 Ill.Dec. 709, 383 N.E.2d 185 (1978); *Moore v. Cannon*, 347 Mass. 594, 199 N.E.2d 312 (1964); *Garland v. Rowan*, 10 Miss. 617 (1844); *In re Weiss' Will*, 64 N.Y.S.2d 331 (1946); *Heater v. Mittendorf*, 72 Ohio App. 4, 26 Ohio Op. 508, 50 N.E.2d 559 (1943); *Pickering v. Pickering*, 64 R.I. 112, 10 A.2d 721 (1940); *Collins v. Collins*, 219 S.C. 1, 63 S.E.2d 811 (1951); *Martin v. Stovall*, 103 Tenn. 1, 52 S.W. 296, 298 (1899); *Singleton v. St. Louis Union Trust Co.*, 191 S.W.2d 143, 147 (Tex.Civ. App.1945); *In re Duval*, 133 Vt. 197, 332 A.2d 802, 803 (1975); *French v. Short*, 207 Va. 548, 151 S.E.2d 354 (1966); *Ford v. Ford*, 70 Wis. 19, 33 N.W. 188 (1887);[4] *see generally*, 16 Am.Jur.2d *Conflicts of Laws* §§ 52, 62, 71; 79 Am.Jur.2d *Wills* § 852; 15A C.J.S. *Conflict of Laws* §§ 18(11), 20(4), 21(4); Restatement, Conflict of Laws 2d, § 265 and Comments, and as to what law governs a surviving spouse's election, 16 Am.Jur.2d *Conflicts of Laws* § 65; Annot., Conflict of Laws Regarding Election For or Against Will, and Effect in One Jurisdiction of Election in Another, 69 A.L. R.3d 1081 (1976 and Supp.).

■ Domicile and residence are not synonymous. *Shaw v. Shaw*, 155 W.Va. 712, 187 S.E.2d 124 (1972). A man may have several residences, but only one domicile. Nonetheless, courts frequently interchange the words, as do legislatures. *See Patterson v. Patterson*, 167 W.Va. 1, 277 S.E.2d

802, 95 So. 721, 726 (1933). Relying upon a probate court jurisdictional statute similar to ours, the court found that if Mississippi has jurisdiction to hold an original (and not ancillary) proceeding to probate a foreign will dealing with real and personal property in its borders, then she can apply her own law without regard to testatrix's domicile.

*See also, Royce v. Denby*, 117 N.H. 893, 379 A.2d 1256, 1259 (N.H.1977).

709, 717 (1981). Cases that we quote in which the word "residence" is used clearly mean what we mean by "domicile".

Our law about domicile dates to 1888. In *White v. Tennant*, 31 W.Va. 790, 8 S.E. 596, 597, we stated: "Two things must concur to establish domicile,—the fact of residence, *and the intention of remaining.* These two must exist, or must have existed, in combination.... The character of the residence is of no importance; and if domicile has once existed, mere temporary absence will not destroy it, however long continued." (Emphasis supplied.)

"The question of residence is one of intention, and the old residence is not considered as lost or abandoned as long as the *animus revertendi* remains." *Maslin's Executors v. Hiett*, 37 W.Va. 15, 16 S.E. 437, 439 (1892). We elaborated in *State ex rel. Linger v. County Court of Upshur County*, 150 W.Va. 207, 144 S.E.2d 689, 702–703 (1965):

> "Two fundamental elements are essential to create a residence, and these elements are: (1) Bodily presence in a place. (2) The intention of remaining in that place. Residence is thus made up of fact and intention, the fact of abode and the intention of remaining, and is a combination of acts and intention. Neither bodily presence nor intention alone will suffice to create a residence. There must be a combination and concurrence of these elements and when they occur, and at the very moment they occur, a residence is created." ... A person is not considered to have lost his residence when he leaves his home and goes into another state, territory or county, for temporary purposes merely, with the intention of returning.... A person does not lose his residence by leaving it with an uncertain, indefinite, half-formed purpose to take up residence elsewhere, and until his purpose to remain has become fixed, he does not abandon his former residence.

These concepts have been reiterated many times. *E.g.*, *Shaw v. Shaw*, 155 W.Va. 712, 187 S.E.2d 124, 127 (1972); *Ward v. Ward*, 115 W.Va. 429, 176 S.E. 708 (1934). *Accord, State-Planters Bank and Trust Company v. Commonwealth*, 174 Va. 289, 6 S.E.2d 629, 632 (1940).

Much of the evidence was that Ms. Atamaniuk never intended to stay in Belmont County, Ohio. Real estate agents in Wheeling, West Virginia testified that she had contacted them for property to rent; her relatives, and friends who were not interested in the result of this proceeding,[5] testified that she wanted to move back to West Virginia and that she had continued in her attempt to reconcile with her husband and move back into her house in Marshall County. Even the property manager of the Ohio apartment complex in which she lived testified that every month Ms. Atamaniuk told her that she was leaving and going back to West Virginia. Ms. Atamaniuk worked in West Virginia, and her mother and husband lived here.

These facts are similar to those in *Shaw v. Shaw*, 155 W.Va. 712, 187 S.E.2d 124 (1972). *Shaw* was a divorce action, but considerations of domicile for divorce are the same as for settlement and distribution of a decedent's personal estate. *State ex rel. Linger v. Upshur County Court, supra* 150 W.Va. at 228, 144 S.E.2d, at 703. Shaw lived for several years in Wayne County, commuting to Putnam County to work. He then rented a furnished room in Putnam County to be closer to his work, but retained his connection to Wayne County, visiting on weekends, and stating that he intended to return there. He filed for divorce in Putnam County and ultimately we found that venue was improper. Even though he lived in Putnam County, he had not become a domiciliary there because he had no intention to stay there.

We also find pertinent the pleadings that Mr. and Ms. Atamaniuk filed in their ongoing divorce action. Linda sued for divorce on September 27, 1977. She filed her com-

---

**5.** A person who is interested in the result of a will proceeding is incompetent to testify about declarations of the testatrix. Syllabus Point 8, *State ex rel. Linger v. County Court of Upshur County*, 150 W.Va. 207, 144 S.E.2d 689 (1965).

plaint in Marshall County and swore that she was a resident of Marshall County, West Virginia. That action was discontinued, and she filed a second suit on November 22, 1977. In the first paragraph of that complaint, she alleged that both parties were bonafide residents of Marshall County; his verified answer on December 20, 1977 admitted her residence. Linda amended her complaint, and Michael answered in February, 1978, again swearing that both parties were West Virginia residents. At the end of March, 1978, Michael moved to file a counterclaim in which he also swore that both parties were West Virginia residents and had been for more than one year next preceding the filing date.

■ Statements made by parties in the course of judicial proceedings may be "judicial admissions". 29 Am.Jur.2d *Evidence* §§ 597 and 615. Statements in verified pleadings clearly are within that rubric. Although they are not conclusive in a subsequent proceeding between the same parties (or as here, their representatives), they are admissible and may be given whatever evidentiary weight the trier of fact deems appropriate. 9 Wigmore on Evidence (3d Edition) § 2593; Annot., Admissibility as evidence of pleading as containing admissions against interest, 90 A.L.R. 1393 (1934 and later case service); 29 Am.Jur.2d *Evidence* §§ 687 and 695. We think it is extremely harmful to Mr. Atamaniuk's cause that the day before Linda was admitted to the hospital and two weeks before she died, he stated in legal pleadings, under oath, that she was a West Virginia resident.

■ In *In re Glassford's Estate*, 114 Cal.App.2d 181, 249 P.2d 908, 34 A.L.R.2d 1259 (1952), decedent, a long-time resident of New York, had gone "West" for a year or so. While in California, she learned she was dying of cancer. She decided not to return to New York because her illness would burden her sister, and she died two months later in California. She had opened bank accounts for her convenience in California. California, nevertheless, determined she was domiciled in New York, reasoning:

Under these circumstances the trial court could reasonably conclude that decedent's determination to remain here until she died was not a free choice on her part but compelled by circumstances over which she had no control; that her stay in California was not for an indefinite period, being originally limited to one year, and later, when advised of her mortal illness, limited by an expected event (her death) which although uncertain in time was controlled by existing facts of which she had knowledge. See *United States v. Luria*, D.C., 184 F. 643, 651. It is apparent that her stay here was dictated by expediency, for a temporary and limited purpose, and with no thought, purpose or intent of establishing a home here. *Id.*, 249 P.2d, at 912.

In *Shenton v. Abbott*, 178 Md. 526, 15 A.2d 906, 908 (1940), the Maryland court determined that decedent was a Maryland domiciliary, even though he spent the last five years of his life in Florida:

But a change of residence to enable a person to perform the duties of a civil office, whether elective or appointive, does not of itself constitute a change of domicil. No temporary residence, whether for the purposes of business, health or pleasure, occasions a change of domicil. Even though a person may be absent from his domicil for many years and may return only at long intervals, nevertheless he retains his domicil if he does not acquire a domicil elsewhere.

Ms. Atamaniuk's will did state that she was "of St. Clairsville, Belmont County, Ohio." Dealing with a similar situation, the Virginia Supreme Court wrote in *State-Planters Bank and Trust Company v. Commonwealth, supra*, 6 S.E.2d at 632:

The fact that she described herself in her last will and testament as being of Richmond is not controlling. It may have been merely a matter of form or of description. At the very time she wrote the will, she was registered at a Richmond hotel, with her address given as Rome ....

Domicile for purposes of Ohio probate court jurisdiction, Page's Ohio Revised

Code Annotated, § 2107.11, was defined in *In re Stephan's Estate,* 5 Ohio Supp. 21, 17 O.O. 361, 31 O.L.A. 457, 459 (1940), as "the place where one has voluntarily fixed his habitation, not for temporary or special purpose, but with the intention of making it his permanent home and to which whenever he is absent, he intends to return".

The evidence is very strong that she never relinquished her intention of returning to West Virginia. Her lack of intention to stay in Ohio divests it of status as her domicile.

We reverse the trial court and remand for further proceedings consistent with this opinion.

Reversed.