## CIRCUIT COURT OF THE CITY OF RICHMOND

Isabella F. R. Tosco

v.

Kennedy F. Rubert, III

In re Will of Kennedy Furlong Rubert, Jr.

October 17, 1988

Case No. N-6023-3

By JUDGE T. J. MARKOW

This case is before the court on the appeal from the Clerk's order of March 6, 1987, permitting probate of a holographic will of the decedent, Kennedy F. Rubert, Jr., and a bill of complaint praying that the court set aside probate of the said holographic will.

The dispositive issue is whether the decedent was domiciled in Virginia at the time of his death, or whether he was domiciled in the state of New Hampshire at that time. Under § 64.1-53 of the Code of Virginia, if Mr. Rubert were domiciled in New Hampshire, which does not recognize holographic wills, his will could only affect the disposition of personal property located in Virginia. If he were found to be a domiciliary of Virginia, then his holographic will would be given its full force and effect.

The decedent lived in Virginia for forty years until his retirement, which was about eight years ago. At retirement in 1980, he and his wife moved from their Virginia home in Yorktown to New Hampshire, fulfilling what his daughter, the plaintiff, said was a "lifetime dream." There the Ruberts registered to vote, bought a home, became active in a church, registered automobiles, opened bank accounts, paid taxes, and in general did all the things

necessary to, and the court finds that they did, establish domicile in New Hampshire. The daughter also lived in the same town in New Hampshire. She maintained a good relationship with her parents and was unaware of any estrangement from them. However, the holographic will excludes her from Mr. Rubert's estate.

Beginning in 1983 the decedent's wife had several health problems for which she and the decedent came to Virginia doctors for treatment, always returning to New Hampshire after the treatment. In late 1986 the wife's condition deteriorated, and Mr. Rubert again brought her to Virginia for care and treatment. Upon leaving New Hampshire, he advised the daughter that he did not know when he would be back, but he never advised her that he was moving to Virginia for good.

In Virginia Mrs. Rubert was admitted to a hospital in Richmond, and Mr. Rubert got an apartment which was near the health care providers and hospital. He had a dispute with the apartment management, and after negotiating a new lease on January 19, 1987, they moved to another which was closer to the health care providers. The apartments were rented on a month-to-month basis. On January 28, 1987, Mrs. Rubert died. She was buried in New Kent County, Virginia, the home of their son.

For some time after coming back to Virginia, Mr. Rubert was discussing returning to Virginia to live with the son and his wife, and they agreed to add an apartment to their home for him to occupy.

On February 5, 1987, Mr. Rubert went with his daughter-in-law to a local Virginia attorney to discuss changes in his will and how to obtain a refund of the security deposit from the first apartment landlord. Mr. Rubert advised the attorney that he had moved to Virginia and wanted his will to be acceptable in Virginia. He asked the attorney to prepare a will that made his son the primary beneficiary of his estate and provided a trust to provide income for his daughter. He did not want his estate to go to his daughter's in-laws. He further advised the attorney that he would be returning to New Hampshire to wrap up his affairs, to pick up belongings, and to take care of matters relating to his wife's estate. He made it clear that he intended to return to Virginia to live out the rest of his life. He advised that he would move

142

to the son's New Kent home when the addition to his home was completed. The attorney was to prepare a draft will for Mr. Rubert's review.

On February 12, 1987, Mr. Rubert advised his wife's hospital of a change of address from New Hampshire to New Kent, Virginia.

The attorney testified that shortly after the meeting with Mr. Rubert, Mr. Rubert called him and advised that he was going to New Hampshire the next day to take care of the matters he talked about and asked if the will draft was not ready, would a holographic will suffice if anything happened to him before he returned to have the attorney's draft executed. The attorney advised that if properly witnessed, it would be a valid will. Mr. Rubert had prepared a holographic will and executed it and had it witnessed on February 9, 1987.

On February 18, 1987, Mr. Rubert and his son flew on one-way tickets to New Hampshire, intending to drive the father's Land Rover back to Virginia. While there, Mr. Rubert probated his wife's will because he was advised by a local New Hampshire attorney that would be the most economical way to handle her estate, paid personal property taxes and relicensed his automobiles. He closed a safety deposit box in one bank but left another open, as it was located about ninety minutes away. Mr. Rubert did not advise the daughter that he was in town, as he did not want to see her.

The son testified that on the morning of February 20, he and his father were planning to return to Virginia, when he went into the house to see what was keeping the father and discovered that he had died.

The issue is whether Mr. Rubert had abandoned his New Hampshire domicile by establishing domicile in Virginia. The burden of proving a change of domicile is on the defendant son. If domiciled in Virginia, the holographic will controls the disposition of Mr. Rubert's estate. If domiciled in New Hampshire, the validity of the will is determined under New Hampshire law, which the court is advised does not recognize holographic wills. To acquire a new domicile, one must abide there with intention to make it his permanent home, or at least his home for an indefinite period. *Howe v. Howe*, 179 Va. 111, 18 S.E.2d 294 (1942).

"Both residence and intention to remain there must concur to constitute domicile." *State-Planters Bank and Trust Co. v. Commonwealth*, 174 Va. 289, 6 S.E.2d 629 (1940). To effect a change of domicile, presence in the new domicile and intention to make the new domicile a home must concur. *Guilfoil v. Hayes*, 169 Va. 548, 194 S.E. 804 (1938). "The essential fact that raises a change of abode to a change of domicile *is the absence of any intention to live elsewhere*." (emphasis added) *Guilfoil v. Hayes* at 555.

The evidence here is clear that Mr. Rubert had changed his residence. He rented an apartment, he arranged with his son to make an addition onto the son's house so that he could live there, and he advised his wife's hospital of his new mailing address in New Kent County, Virginia. Mr. Rubert was living in Virginia. More difficult is whether Mr. Rubert intended to live in Virginia permanently, to make it his home.

While there is conflicting evidence on the intent issue, the greater weight of the evidence is that Mr. Rubert intended to make Virginia his home indefinitely. He made plans with his son and daughter-in-law to add an apartment to their house in New Kent County, Virginia, so that he could live there, he advised the hospital of a new address, he told his attorney that he planned to stay in Virginia, he made arrangements to change his will, he told of his plans to return to New Hampshire solely to wrap up his affairs there, he told one of the persons witnessing his will that he would soon be moving to his son's home, he buried his wife in Virginia, not New Hampshire, he and his son traveled to New Hampshire on one-way plane tickets intending to come back in one of Mr. Rubert's cars, he closed and emptied a safety deposit box in a New Hampshire bank, he and the son were about to begin the return trip to Virginia, and he was prevented from returning only by his death.

The evidence supports the conclusions that Mr. Rubert had established a residence in Virginia and that he intended to make Virginia his permanent home. He had established domicile in Virginia. Accordingly, the probate of his holographic will was proper.