## CIRCUIT COURT OF FAIRFAX COUNTY

Oliver

v.

Jerry C. Oliver

January 27, 2003

Case No. (Chancery) 178681

BY JUDGE ROBERT W. WOOLDRIDGE, JR.

This matter is before the Court on Defendant Jerry C. Oliver's Special Appearance to challenge this Court's exercise of personal jurisdiction over Mr. Oliver in the above referenced matter. Mr. Oliver objects to jurisdiction in this case on the basis that he was not a resident or domiciliary of the Commonwealth of Virginia at the time Mrs. Oliver filed the underlying Bill of Complaint for Separate Maintenance. Both parties have briefed the issue, and I took the matter under advisement following oral argument. Having considered the parties' arguments and relevant statutes and case law, I find that this Court properly exercised personal jurisdiction over Mr. Oliver in this case, and thus Defendant's Special Appearance and Motion to Dismiss this action is denied.

I find the facts relevant to the present motion to be as follows. Mr. and Mrs. Oliver wed in Rangoon, Burma, in 1995. Mr. Oliver was stationed in Burma as part of his employment with the United States Department of State. At the time of their marriage, in fact from 1979 through 1997, Mr. Oliver listed Arkansas as his "home of record" with the State Department. In 1997, Mrs. Oliver became pregnant. Shortly thereafter, Mr. Oliver requested and

received an assignment within the United States in order to provide better medical care for his wife during her pregnancy.

The Olivers moved to Brandy Station, Virginia, in August 1997. They purchased a home and resided in Brandy Station for eight months, during which, on September 30, 1997, the Olivers' first child was born. Also during this period, Mr. Oliver changed his "home of record" with the State Department to Virginia and obtained a Virginia driver's license. Mrs. Oliver considers Virginia to be the Olivers' home. Mrs. Oliver has never changed her Virginia voting registration or taxpayer status since 1997.

The Olivers sold their Virginia home in April 1998 and began a series of relocations to various duty stations according to Mr. Oliver's State Department assignments. First, in April 1998, Mr. Oliver accepted an assignment in Sierra Leone, and Mrs. Oliver and their child returned to Burma. In November 1998, Mr. Oliver returned to Warrenton, Virginia, for a brief training assignment. (Neither party presented evidence as to the duration of this stay.) Sometime after that assignment, the Olivers reunited and moved to Yemen, where they resided for five months. They next resided in Bangladesh from February 1999 through February 2001. Finally, the Olivers lived in Bulgaria from February 2001 through June 2002. Notably, the Olivers filed joint Virginia income tax returns in 1999, 2000, and 2001.

In early March 2002, Mr. Oliver filed retirement papers with the State Department. Also during March 2002, Mr. Oliver instructed the State Department to stop deducting Virginia income tax from his salary and to start deducting Arkansas income tax instead. In that same month, while stationed in Bulgaria but present in the United States, Mr. Oliver traveled to Arkansas for one week. While in Arkansas, Mr. Oliver obtained an Arkansas driver's license, library card, and voter registration card, and turned in his Virginia license plates to the Arkansas Department of Motor Vehicles. He did so intending to change his domicile to Arkansas. Mr. Oliver maintained no formal residence in Arkansas during this time; he used his attorney's Arkansas address for the purposes of establishing his Arkansas domicile. During this same visit, Mr. Oliver filed a divorce action in an Arkansas court, which he later dismissed because he and his wife were not formally separated. Mr. Oliver testified that he did not consider he and Mrs. Oliver separated until June 3, 2002.

In early April 2002, Mrs. Oliver and their child visited Mr. Oliver in Arkansas for a few days. The Olivers then returned to Bulgaria for a short while until Mr. Oliver was transferred back to the United States owing to the Olivers' marital difficulties. In late May 2002, Mrs. Oliver returned to Virginia to find a job and a new family residence. She was followed by Mr.

Oliver and their child who arrived in Virginia on June 1, 2002. At that time, Mr. Oliver was awaiting a new assignment with the State Department. The Olivers remained in a Virginia hotel for two nights. On June 3, 2002, Mrs. Oliver delivered to Mr. Oliver a letter and proposed custody agreement. Mr. Oliver then left Virginia with their child and began residing in a hotel in Washington, D.C. Mr. Oliver paid for the hotel with a credit card bearing his own name but his father's Oklahoma address as Mr. Oliver he did not have any permanent residence or mailing address.

On June 5, 2002, in connection with his retirement request, Mr. Oliver filed a form with the State Department directing his retirement pay to be direct-deposited to an Arkansas bank. At some point later, he withdrew his retirement request entirely. Mrs. Oliver testified that, while she and her husband had discussed his retirement over the years, he never mentioned retiring to Arkansas and she never agreed to move or change her domicile to that state.

Also on June 5, 2002, Mrs. Oliver served Mr. Oliver in person in the District of Columbia with a Bill of Complaint for separate maintenance, thereby instituting the present matter, and a notice to appear before the Court's calendar control judge on Thursday, June 6, 2002, to set a date for a *pendente lite* hearing on custody and support.

After receiving service of the Bill of Complaint, Mr. Oliver remained at his Washington, D.C., hotel for a short time, then requested extended leave from the State Department and traveled to Arkansas. He remained in Arkansas for several weeks before being transferred to Pakistan, where he remains.

This Court held a *pendente lite* hearing on custody and support issues on June 27, 2002. Mr. Oliver did not appear at that hearing despite having actual notice of the June 27, 2002, hearing. See July 8, 2002, Order, Ex. 1 at 5. During that proceeding, the Court found that it had jurisdiction over custody issues in this case under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), Virginia Code §§ 20-146.1, *et seq.*, because Virginia was the child's "home state," and over support issues under the Virginia Long-Arm Statute, Virginia Code § 8.01-328.1, because the Olivers had maintained a matrimonial domicile in Virginia. See *id.* at 3.[1] The Court

---

[1] The Court found that both parties were domiciliaries of Virginia based on their residence within the state and intent to remain residents and domiciliaries of Virginia despite temporary absences. Moreover, the Court found that, having acquired a matrimonial domicile in Virginia, the parties never established any other domicile, and their domiciliary status in Virginia therefore continued through the filing of this action. See July 8, 2002, Order, Ex. 1 at 3.

also found that it had jurisdiction over support issues under the Uniform Interstate Family Support Act ("UIFSA"), Virginia Code §§ 20-88.32, *et seq.*, because the Olivers' child resided in Virginia as a result of Mr. Oliver's actions. See *id.* at 7. The Court awarded Mrs. Oliver primary physical custody of their child and both child and spousal support. See July 8, 2002, Order.

Mr. Oliver, through counsel, appeared specially before this Court on August 28, 2002, to challenge this Court's exercise of jurisdiction in the July 8, 2002, Order, and to move for a dismissal of this case. Mr. Oliver contends that he neither is nor was a resident or domiciliary of Virginia when Mrs. Oliver instituted this action. Mr. Oliver argues that he extinguished his Virginia domicile and established domicile in Arkansas in April 2002 by virtue of his presence in that state and his actions described above evidencing his intent to remain in Arkansas. Therefore, argues Mr. Oliver, the parties' matrimonial domicile was Arkansas, not Virginia, as of the filing of this action, and this Court thus has no jurisdiction to hear this case. Mrs. Oliver contends that Mr. Oliver never established any residency in Arkansas and, regardless of his intent, cannot therefore have established domicile in Arkansas. Jurisdiction over this matter, argues Mrs. Oliver, is appropriate under the Virginia Long-Arm Statute.

Although not challenged directly in Mr. Oliver's Special Appearance, there seems to be some question as to notice of the June 27, 2002, *pendente lite* hearing, at which Mr. Oliver did not appear. As noted above, this Court found that Mr. Oliver had actual notice of that proceeding. Moreover, the Court's file for this case indicates that Mr. Levy, counsel for Mrs. Oliver, proffered to the Court during the June 27, 2002, hearing that Mr. Oliver had been properly noticed. The Court is therefore satisfied that notice was properly affected in this case.

Apart from this Court's prior ruling in this case, I find that this Court has personal jurisdiction over Mr. Oliver for the purposes of custody and support. First, this Court has jurisdiction over custody matters in this case under the UCCJEA.[2] Section 20-146.12(A)(1) of the Virginia Code provides, in relevant part:

---

[2] It is not entirely clear whether Mr. Oliver is challenging this Court's jurisdiction over custody matters in this case. Mr. Oliver's special appearance asserts that this Court has no personal jurisdiction over him, but moves to dismiss the entire case. However, Mr. Oliver admitted at the hearing on his Special Appearance that no state other than Virginia has jurisdiction over custody issues.

> [a] court of this Commonwealth has jurisdiction to make an initial child custody determination only if ... this Commonwealth is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this Commonwealth but a parent or person acting as a parent continues to live in this Commonwealth.

Va. Code Ann. § 20-146.12. The UCCJEA further provides that the "home state" means:

> the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. In the case of a child less than six months of age, the term means the state in which the child lived from birth with any of the persons mentioned. A period of temporary absence of any of the mentioned persons is part of the period.

Va. Code Ann. § 20-146.1. I find that Virginia is the Olivers' child's "home state." The Olivers moved to Virginia in August 1997. The Olivers' child was born on September 30, 1997. Mrs. Oliver continued to live in Virginia with the child from September 30, 1997, until sometime in April 1998, a period of at least six months. Mrs. Oliver and their child then began a series of temporary absences, traveling with Mr. Oliver as he was transferred between international duty stations, before returning to Virginia in May 2002. Mrs. Oliver commenced this proceeding on June 5, 2002. Under the statute, Virginia is the child's "home state" if the child and at least one parent resided in Virginia for "at least six consecutive months immediately before the commencement of a child custody proceeding." Va. Code Ann. § 20-146.1. Further, "[a] period of temporary absence of any of the mentioned persons is part of the period." *Id.* I find that Mrs. Oliver's series of relocations pursuant to Mr. Oliver's employment were temporary absences included within the statutory period. Therefore, the Olivers' child resided with her mother in Virginia for at least six months immediately before this action commenced, and thus Virginia is the child's "home state." As a result, this Court has jurisdiction over custody matters in this case, and will continue to have exclusive jurisdiction over custody matters in this case so long as Mrs. Oliver resides with the child in Virginia. Va. Code Ann. § 20-146.13.

Next, I find that this Court has personal jurisdiction over Mr. Oliver for purposes of support under both the Virginia Long-Arm Statute and the UIFSA, regardless of whether Mr. Oliver was a resident of Virginia at the commencement of this action. Mr. Oliver argues that he extinguished his Virginia domicile and established domicile in Arkansas in April 2002, making Arkansas the parties' matrimonial domicile as of the filing of this action. I do not agree. Only two elements are required to extinguish a party's domicile in one state and establish a new domicile in another: (1) personal presence in the new state; and (2) the intention to make that new place a home. *Guilfoil v. Hayes*, 169 Va. 548, 555, 194 S.E. 804 (1938). It is clearly established in Virginia that domicile and residence are not words of equivalent meaning. *State-Planters Bank v. Commonwealth*, 174 Va. 289, 295, 6 S.E.2d 629 (1940). A person may have more than one residence, while one can have only a single domicile. It is equally established that residency is a prerequisite of domicile. *Id.* ("Domicile means more than residence . . . domicile is residence at a particular place, accompanied by intention to remain there for an unlimited time . . . both residence and intention to remain there must concur to constitute domicile.")

In this case, Mr. Oliver never established residency in Arkansas. After Mr. Oliver established his Virginia domicile, and before the commencement of this action, Mr. Oliver spent a total of one week in Arkansas. And, while, during that time, he obtained an Arkansas driver's license, library card, and voter registration card, and turned in his Virginia license plates to the Arkansas Department of Motor Vehicles, he did so using his attorney's Arkansas address. Mr. Oliver maintained no formal residence or "personal presence" in Arkansas during this time or at any point after he established his Virginia domicile. The purpose of Mr. Oliver's trip to Arkansas is not clear on these facts. However, the very actions Mr. Oliver asserts evidence his intention to remain a permanent resident and domiciliary of Arkansas are belied by the fact that he had no Arkansas residency. The absence of residency in Arkansas precludes Mr. Oliver from establishing domicile in Arkansas, which necessarily means that Mr. Oliver's matrimonial domicile remains in Virginia.

As a result, this Court has personal jurisdiction over Mr. Oliver pursuant to the Virginia Long-Arm Statute, which provides, in relevant part:

> A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's . . . having maintained within this Commonwealth a matrimonial domicile at the time of separation of the parties

upon which grounds for divorce or separate maintenance is based . . . or at the time of commencement of such suit, if the other party to the matrimonial relationship resides herein.

Va. Code Ann. § 8.01-328.1(A)(9). Virginia was the Olivers' matrimonial domicile when Mrs. Oliver commenced the present action. Mrs. Oliver continues to reside in Virginia. Therefore, this Court may exercise personal jurisdiction over Mr. Oliver for purposes of support under the Virginia Long-Arm Statute.

However, even if Mr. Oliver is correct in his assertion that he was not a resident or domiciliary of Virginia at the commencement of this action, this Court could nonetheless exercise personal jurisdiction over Mr. Oliver for purposes of support. If Mr. Oliver had established residency in Arkansas in April 2002, as alleged, he would be subject to jurisdiction under the UIFSA, which provides, in relevant part:

> In a proceeding to establish, enforce, or modify a support order or to determine parentage, a tribunal of this Commonwealth may exercise personal jurisdiction over a nonresident individual or the individual's guardian or conservator if . . . (3) the individual resided with the child in this Commonwealth; (4) the individual resided in this Commonwealth and paid prenatal expenses or provided support for the child; or (5) the child resides in this Commonwealth as a result of the acts or directives of the individual.

Va. Code Ann. § 20-88.35. Mr. Oliver and his family resided in Brandy Station, Virginia, after the birth of their child from September 30, 1997, until April 1998, thereby satisfying the requirement set forth in § 20-88.35(3) of the Virginia Code. No direct evidence is before the Court of any support provided by Mr. Oliver during the family's stay in Virginia. But Mr. Oliver admitted that he moved the family to Virginia seeking improved medical care for his wife and child. It is disingenuous for Mr. Oliver to argue that he did not provide prenatal expenses or support for the child. Therefore, jurisdiction is further authorized under § 20-88.35(4) of the Virginia Code. Finally, as Mr. Oliver moved the child to Virginia for the purpose of receiving medical care, and established residency in Virginia which, as far as the child is concerned, has not been extinguished, there can be no question that the Olivers' child resides in Virginia as a result of Mr. Oliver's actions. Therefore, jurisdiction is further authorized under § 20-88.35(5) of the Virginia Code. Thus, this Court may exercise personal jurisdiction over Mr. Oliver regardless of whether he

had established an Arkansas domicile prior to the commencement of this action.

For these reasons, Mr. Oliver's Special Appearance and Motion to Dismiss is denied.