## Wytheville.

## TALLEY, ADMINISTRATOR V. COMMONWEALTH.

### June 10, 1920.

1. TAXATION—*Intangible Personal Property—Domicile of Taxpayer.* —The words "residing therein" and "residing * * * in his district," as used in sections 491 and 494 of the Code of 1904, as amended by Acts 1915, ch. 147, p. 219, so far as they relate to taxes upon intangible property having no other situs for taxation, refer to persons domiciled in the district of the local commissioner making the assessment. And where the owner of intangible property is not so domiciled, there is no right of assessment.

2. "DOMICILE"—*"Residence"—Meaning of Terms.*—"Domicile" and "residence" are not interchangeable words of the same, or equivalent, meaning. A man can have but one domicile at one and the same time, but he may have several residences. Hence, domicile means more than residence.

3. DOMICILE—*Change of Domicile.*—A domicile, once acquired, continues to exist until another is acquired elsewhere. To effect a change of domicile, there must be an actual abandonment of the old domicile, coupled with an intent not to return to it, and also a new domicile acquired at another place, which can only be done by the union of intent and personal presence.

4. DOMICILE—*Change of Domicile.*—Mere change of place is not change of domicile, and mere absence from a domicile once acquired, however long continued, does not effect a change of domicile. This change must be effected by the concurrence of the *animus* to change, with residence at the new location.

5. DOMICILE—*Questions of Law and Fact.*—The existence or non-existence of a domicile in a given locality is a mixed question of law and fact.

6. DOMICILE—*Change of Domicile—Evidence of Intent—Declarations.* —Where one has changed his place of abode, and the question arises whether he intended to change his domicile, all acts usually indicative of purpose, if such acts exist, should be carefully scrutinized, and their probative value properly determined. The declarations as to domicile by the party whose domicile is in controversy are also competent.

7. TAXATION—*Intangible Property—Domicile of Taxpayer—Case at Bar.*—In an action by an administrator to set aside as erroneous an assessment upon the intangible property of his decedent, it appeared from the evidence that in 1911 the decedent was living in the city of Richmond, and during that year obtained a divorce from her husband and removed to Los Angeles, Cal., where she subsequently remarried. In the latter part of 1915, or early in 1916, the decedent returned to Richmond and took a room at a hotel, which she occupied for about six months until her death. During the six months preceding her death decedent gave no intimation of her intent in returning to Richmond, or of her plans for the future. Decedent left a mother, a brother, and a sister, none of whom lived in this State.

*Held:* That the evidence established that by her removal and marriage in California the decedent acquired a new domicile in that State; that no consistent, satisfactory theory of the decedent's intent in returning to Richmond could be derived from the proven facts; that starting with the established fact that the decedent acquired a new domicile in California several years before her death, the burden of proof was upon the Commonwealth to show that she lost this domicile and acquired a new one in Virginia, which under the evidence the Commonwealth had failed to do.

8. DOMICILE—*Presumption.*—Where a person's domicile is once established, it is presumed in law to exist until another is acquired elsewhere.

9. TAXATION—*Presumption in Favor of Legality of Assessment—Shifting of Burden of Proof.*—Although an assessment of taxes is presumed to be legal and valid in all respects until the contrary is affirmatively shown, where, as in the instant case, the defense is set up and established that the taxpayer had lost her original Virginia domicile and acquired a new one in California, then the burden is shifted to the Commonwealth to maintain its right of recovery by establishing the loss of the California domicile and the acquisition of a new one in this State.

Error to a judgment of the Hustings Court of city of Richmond, in a proceeding to correct an erroneous assessment. Judgment for the Commonwealth. Plaintiff assigns error.

*Reversed.*

The opinion states the case.

*R. H. Talley*, for the plaintiff in error.

*John R. Saunders, Attorney-General, J. D. Hank, Jr., Assistant Attorney-General,* and *Leon M. Bazile,* for the Commonwealth.

SAUNDERS, J., delivered the opinion of the court.

In 1911, Mrs. Ellen Stuart Bentley was living in the city of Richmond, Va. During that year she obtained a divorce from her husband, Vernon Bentley, and removed to Los Angeles, California, where she subsequently married one Vance. In the latter part of 1915, or early in 1916, Mrs. Vance returned to Richmond, and took a room at the Jefferson Hotel. She occupied this room until her death, which took place some time in June of that year. It does not appear whether Mrs. Vance, at the time of her return, was a widow, or was separated from her husband, or had returned for her health, or on business. On these points and on all other points that would afford an explanation of her reappearance in Richmond, or would give any clue as to her plans and purposes in connection with her return, the record is entirely silent.

At the time of her death, Mrs. Vance had a deposit of about $2,500 in one of the Richmond banks. During her lifetime she derived an income from a life estate in trust in the city of New York. The corpus of this estate was valued at $350,000, and consisted entirely of stocks and bonds. Under the trust agreement this property, at the death of Mrs. Vance, passed to her brother and sister. This brother lived in New York, and the sister in Atlanta with the mother.

At the request of the distributees, Robert H. Talley quali-

fied as administrator of the decedent. His co-administrator was the New York Life Insurance and Trust Company. Before he was able to settle his accounts and make distribution of the balance in his hands, the administrator was notified by Mr. William H. Sands, then examiner of records for the tenth judicial circuit, that he had reported for assessment against Ellen Stuart Vance a tax of sixty-five cents on the hundred dollars on the intangible personal property owned in New York at the time of her death, and of the value of $350,000, as stated aforesaid. The administrator denied the legality of the proposed assessment, and proceeded to contest the same. On February 20, 1919, he filed his petition in the Hustings Court of the city of Richmond, and later, by leave of court, an amended and supplemental petition, praying that the assessment be adjudged illegal and void, and that he be exonerated from the payment of the tax sought to be imposed. Some evidence was taken.

The court refused to exonerate the administrator entirely from the payment of the assessment, or to cause the same to be removed from the records of the commissioner of revenue and the treasurer of the city of Richmond, but relieved him from taxes assessed for the year 1917, on the ground that the interest of Mrs. Vance in the property terminated in the year 1916. Further the court proceeded in its order to assess against "the said Robert H. Talley and the New York Life Insurance and Trust Company, administrators of the estate of Ellen Stuart Vance, deceased, for the year 1916, a tax upon $350,00 value of intangible personal property, at the rate of sixty-five cents per $100.00, together with interest thereon from December 1, 1916, until paid, and to direct the treasurer of the city of Richmond to collect this tax and interest and penalty." To this order of the Hustings Court of the city of Richmond, a writ of error was allowed and a supersedeas awarded by one of the judges of this court.

Various errors are assigned in the petition of the plaintiff in error. It is obvious that the fundamental inquiry is whether Mrs. Vance, at the time of her death, was domiciled in Virginia, since in the event she was not so domiciled the assessment of the tax aforesaid was erroneous.

[1] This court, in the case of *Cooper's Adm'r* v. *Commonwealth,* 121 Va. 338, 93 S. E. 680, discussing sections 491 and 494 of the Code (1904), as amended by Acts 1915, c. 147, so far as they relate to taxes upon intangible property having no other situs for taxation, held that the words, "residing therein" and "residing * * * in his district," referred to persons domiciled in the district of the local commissioner making the assessment."

The fact that Mrs. Vance was domiciled in Richmond at the time of her death is essential to the Commonwealth's case. It is the foundation upon which the right to make an assessment reposes. No domicile, no right of assessment.

[2] The law of domicile, what constitutes it, how it may be secured, and how lost, has been frequently announced by the courts of this and other States. Domicile and residence are not interchangeable words of the same, or equivalent, meaning. A man can have but one domicile at one and the same time, but he may have several residences. Hence, domicile means more than residence. *Bruner* v. *Bunting,* 15 Va. Law Reg. 514, and cases cited.

[3] A domicile once acquired continues to exist until another is acquired alsewhere. To effect a change of domicile, there must be an actual abandonment of the old domicile, coupled with an intent not to return to it, and also a new domicile acquired at another place, which can only be done by the union of intent and personal presence. *Berry* v. *Wilcox,* 48 Am. St. Rep. 711, note.

To the same effect is *Lindsay* v. *Murphy,* 76 Va. 428, in which Burks, J., delivering the opinion of the court, said:

"To constitute a new domicile, two things must concur—first, residence in the new locality; second, the intention to remain there.   Until the new domicile is acquired, the old one remains, and whenever the change of domicile is alleged the burden rests upon the party alleging it."   See also 9 R. C. L. 557.   "Every one is deemed to have a domicile somewhere, and in general one domicile is not lost until another is gained." 9 R. C. L. 553.

"Neither presence alone, nor intention alone, will suffice to create a domicile of choice.   Both must concur, and at the very moment they do concur, the domicile is created. As it is sometimes expressed, the *factum* (presence) and the *animus* (intention) must unite.   Therefore no change of locality alone (there being no change of intent or *vice versa*) will effect an alteration of the domicile of choice, which remains where it was until the *factum* and the *animus* again unite."   Minor Conflict of Laws, sec. 59.

"To effect a change of domicile, there must be a voluntary change of residence, the residence at the place chosen for the new domicile must be actual; and to the fact of residence, must be added the *animus manendi*.   The mere relinquishment of actual residence is no abandonment of the domicile, if there is no intention to change it; as where a man leaves his home for temporary purposes, as for a voyage, for foreign travel, for health or pleasure, or business of a temporary nature.   In all such cases there is an *animus revertendi*."   9 R. C. L. 553.

"When a man leaves a State with no settled purpose of acquiring a residence elsewhere, but with only a conditional purpose of doing so, he does not lose the former domicile, so long as the intention remains conditional.   *Id.*, p. 554. According to some authority, even if a man definitely resolves to change his domicile provided he can find a new domicile to his liking, the old domicile is not lost and the new domicile acquired, merely by a new residence or even

66

by several residences in succession, in the course of his quest, when the residence at any given stop in his progression is not accompanied by the *animus manendi.*

"When a person starts on an extended journey, intending never to return to the domicile he is leaving, and to establish a new domicile elsewhere, he does not lose the one left until the new one has been actually established, and while in transit he retains the former domicile. 9 R. C. L. 553.

[4] That is to say, mere change of place is not change of domicile, and mere absence from a domicile once acquired, however long continued, does not effect a change of domicile. This change must be effected by the concurrence of the *animus* to change, with residence at the new location.

[5] The existence or non-existence of a domicile in a given locality is a mixed question of law and fact. 14 Cyc., p. 865.

[6] Hence, in seeking to draw a conclusion of intent in a given case, all acts usually indicative of purpose, if such acts exist, should be carefully scrutinized, and their probative value properly determined.

"When one has changed his place of abode, and the question arises whether he intended to change his domicile, all his acts and conduct which fairly indicate his purpose in that particular, within a reasonable time before and after the event, may be put in evidence. This is evidence of his intention and is competent. The declarations as to domicile by the party whose domicile is in controversy are also competent." 9 R. C. L. 557.

"Mere residence elsewhere will not rebut the presumption as to continuance of domicile, unless it is inconsistent with an intent to return to the original domicile." 14 Cyc., pp. 860-861.

"To effect an abandonment of one's domicile, there must be the choice of a new domicile, actual residence in the place

chosen, and the intent that it be the principal and permanent residence." 9 R. C. L. 555.

So much for the law of domicile, the presumption of its continuance, and the requirements for its establishment.

It has been pointed out that at the very threshold of this case the court was confronted with the inquiry: "Was Mrs. Vance domiciled in Richmond at the time of her death?" The right of the State to assess and collect the tax in question reposes upon the affirmative determination of this inquiry.

[7] The evidence relating to this vital feature of the case is very meagre, and consists solely of the testimony of Mr. Robert H. Talley. This witness, upon direct and cross-examination, testified to the following effect, as certified by the trial court: "That he was administrator in the State of Virginia of the estate of Ellen Stuart Vance, deceased; that Ellen Stuart Vance died on the 12th day of June, 1916, in the city of Richmond; witness filing a certificate of the Health Department to this effect; that in the year 1911 the decedent was the wife of one L. Vernon Bentley, and lived in the city of Richmond; that in the said year 1911 Ellen Stuart Bentley was granted a decree of divorce by the Chancery Court of the city of Richmond from the said L. Vernon Bentley, and thereupon removed from the city of Richmond and from the State of Virginia, and took up her domicile and residence in the city of Los Angeles, California, where she subsequently married one Vance; that she returned to Richmond in the latter part of December, 1915, or the first part of January, 1916, taking a room at the Jefferson Hotel, and remaining there until her death; that witness had no information whatsoever as to the intention of the said Ellen Stuart Vance to make Richmond her permanent home; that he talked with her after her return from California, but she did not indicate whether she expected to make Richmond her home or not;

and witness could only say that, as a matter of fact, at the time of her death, and for about six months prior thereto, she had lived at the Jefferson Hotel in the city of Richmond; that Mrs. Vance's next of kin were her mother and sister, who lived in Atlanta, Georgia, and her brother, who lived in New York; * * "

It will be perceived that this testimony establishes in the most positive and unequivocal fashion, not only that Mrs. Bentley was granted her divorce in 1911, but that she thereupon *removed from the city of Richmond and State of Virginia, and took up her domicile and residence* in Los Angeles, California, where she married Vance. From that time forward, until she acquired a new domicile, she must be regarded as domiciled in California. In December, 1915, or early in January, 1916, Mrs. Vance reappeared in Richmond. She did not buy a home in the city, but took a room at the Jefferson Hotel, for what term does not appear. During the six months preceding her death, Mrs. Vance gave no intimation of her intent in returning to Richmond, or of her plans for the future. The witness, Talley, talked with her after her return, but she did not indicate whether she expected or not to make Richmond her permanent home. Nor did the witness have any knowledge on this subject otherwise derived.

Do these scanty facts justify the conclusion that Mrs. Vance had abandoned her California domicile and established a new domicile in this State? Possibly such was her intention, but in seeking to derive her intent from the inconclusive evidence afforded we see through a glass darkly and no positive conclusion can be reached. If it is suggested that her conduct is not inconsistent with an intent to establish a new domicile in Virginia and abandon the old one, the reply is obvious that while not inconsistent with that intent, this conduct does not establish such intent. Mrs. Vance was a wealthy woman, well able to travel from place

to place, to move on or to tarry, as her whim or caprice suggested. There is nothing in the record to show whether she was in Richmond for business, or for pleasure, for her health, or for other reasons. It is a fact not to be overlooked that neither her mother, nor her brother, nor her sister lived in this State. Hence, in returning to Virginia she was not returning to the bosom of her family. Possibly she may have had a conditional purpose to establish a new domicile, but a six months' residence in a Richmond hotel, under the facts of this case, does not establish the *animus manendi.* Such residence is consistent with the *animus revertendi.* The decedent might have resided in Virginia for a much longer period than six months without effecting a change of domicile. We know nothing of the circumstances under which Mrs. Vance left California, and nothing of her plans in so leaving. We know nothing of her intent by word of mouth. On the one occasion when she might have spoken and revealed her plans and purposes to the witness, Talley, she was silent. This may have been because she had no plans, and was merely drifting, content to remain in Richmond until the call of pleasure, or the demands of business, if she had any, or regard for her health, impelled her to move on to the next place of sojourn. What her plans were is bare conjecture, and in dealing with this case and seeking to ascertain the intent of the decedent, we are cribbed, cabined and confined to the domain of conjecture. No consistent, satisfactory theory of the decedent's intent in returning to Richmond can be derived from the proven facts. These facts do not point in definite fashion to any one purpose. They are consistent with any one of half a dozen purposes. The burden is on the defendant in error to take this intent out of the domain of conjecture. Starting with the established fact that Mrs. Vance acquired a new domicile in California several years before her death, the defendant in error must show that

she lost this domicile, and acquired a new one in Virginia. Failing to show this loss of the old domicile, and acquisition of a new one, the defendant in error is without standing in this case.

[8]   It is insisted on the part of the defendant in error that "this is not a case of showing that she (the decedent) has changed her domicile, but a case of showing what her domicile is." But this is a "case of showing a change of domicile." The uncontradicted evidence establishes the California domicile. That domicile is presumed in law to exist until another is acquired elsewhere. Hence, it is incumbent on the State to establish a domicile in Virginia, as a condition precedent to its right to recover the alleged omitted taxes of 1916.

[9]   Recognizing this difficulty, and the paucity of its evidence, the defendant in error seeks to relieve itself of the burden which it carries, by suggesting that "an assessment of taxes is presumed to be legal and valid in all respects until the contrary is affirmatively shown." That principle is not denied; but the party resisting an assessment would certainly defeat the same, if he showed that the statute upon which the State relied was unconstitutional, or that the taxes claimed were not due. In the instant case, the plaintiff in error set up and established in the court below the defense that Mrs. Vance had lost her original Virginia domicile, and acquired a new one in California. When she returned to Virginia in 1916, the presumption accompanied her, in the absence of evidence to the contrary, that she retained her California domicile. If it be true that the presumption in favor of the legality of an assessment imposed a burden upon the plaintiff in error, then that burden was shifted when he showed that the decedent had acquired a domicile in California prior to coming to Virginia. Thereafter the burden was on the Commonwealth to maintain its right of recovery by establish-

ing the loss of the California domicile and the acquisition of a new one in this State. In the opinion of this court, this burden has not been sustained. The evidence relied upon to overcome the positive establishment of the California domicile and the presumption of its continuance, and to establish a new domicile in Virginia is palpably inadequate to justify such a conclusion. There are various other assignments of error to the order of the trial court, but in view of the conclusion reached on the question of domicile, it is not necessary to consider these assignments.

In the opinion of this court, for the reasons given, the Hustings Court of the city of Richmond erred in holding that Mrs. Ellen Stuart Vance was domiciled in Virginia at the time of her death, and the order making the assessment of taxes, complained of, must be reversed.

*Reversed.*