[No. A024984. Sixth Dist. Mar. 24, 1986.]

In re the Marriage of LAILA ADEEB SAWAYA and
ABDUL LATIF MALAK.
LAILA ADEEB SAWAYA MALAK, Appellant, v.
ABDUL LATIF MALAK, Appellant.

**COUNSEL**

William M. Hilton for Appellant Husband.

C. Rick Chamberlin, Lawrence H. Stotter and Stotter & Samuels for Appellant Wife.

**OPINION**

**AGLIANO, Acting P. J.**—Abdul Latif Malak (husband) has appealed from orders of the trial court entered on September 21, 1983, (1) denying his motion to enforce a child custody decree issued by the Sherei Sunnit Court, Beirut, Lebanon; (2) finding that whether California had subject matter jurisdiction of the issue of child custody was to be investigated and determined at a subsequent hearing; and (3) awarding wife attorney's fees in the sum of $2,500 and costs of $27.25.

While this appeal was pending, the trial court on August 14, 1985, determined California did not have subject matter jurisdiction over the issue

of child custody. That order became final and husband, who now has the children with him in the United Arab Emirates, has withdrawn his appeal on the issue of subject matter jurisdiction.

Laila Sawaya Malak (wife) cross-appeals from the trial court's order of the same date quashing service on husband of summons issued on wife's petition for dissolution of marriage, the trial court determining it lacked personal jurisdiction over husband.

We conclude the court correctly determined it did not have in personam jurisdiction over husband. We further decide that the court erred in declining to recognize and enforce the Lebanese decrees.

### Factual Background

Husband and wife, both citizens of Lebanon, were married in Lebanon in January 1970. They have two children, Fadi, born September 20, 1972, and Ruba, born January 25, 1977. Due to the civil war in Lebanon the parties moved to the United Arab Emirates (UAE) in 1976, where they lived together until July 1982, when wife, without husband's consent, took the children and came to California to reside with her brother in San Jose.

Wife filed a petition for legal separation on September 8, 1982, in Santa Clara County Superior Court. Her petition also prayed for custody of the children, child and spousal support, and attorney's fees and costs. Husband was personally served with summons while in San Jose, apparently to find and visit the children. Husband made an appearance in the action which he labeled "special." On October 7, 1982, following a hearing confined to the issue of the court's jurisdiction as to child custody, the trial court determined it did *not* have jurisdiction over the issue of custody, presumably because of the children's very brief presence in California. The court did not rule on defendant's special appearance claim. Husband then commenced separate custody proceedings in the UAE and in Lebanon, and obtained judgments in each jurisdiction which purported to award him custody of the children.

On December 27, 1982, husband returned to California and filed in the pending legal separation proceeding in Santa Clara County a motion to enforce the judgment of the Abu Dhabi Sharia Court, United Arab Emirates, dated November 1, 1982, which in effect granted him custody of the children. Husband also filed the judgment with the court clerk pursuant to Civil Code sections 5164 and 5172 of the Uniform Child Custody Jurisdiction Act (UCCJA), which authorize the filing of child custody decrees of other states

and foreign countries and provide that such decrees are to be given effect and enforced in like manner as decrees of this state.

On January 21, 1983, the trial court determined that wife had received neither adequate notice of the proceedings nor opportunity to be heard prior to the UAE judgment and therefore denied husband's motion to enforce the UAE decree. Husband did not appeal from this order.

On March 14, 1983, husband filed another motion to enforce the same UAE decree. This time he added the allegation that the UAE law had provided wife with the opportunity to appeal the custody decree and thereby to have a trial de novo; and that despite having been served with the decree on December 27, 1982, she failed to appeal and allowed the decree to become final. Wife moved to strike this motion on grounds of res judicata and the previously argued lack of notice, and requested attorney's fees and costs. After a hearing on May 24, 1983, the court filed its order granting wife's motion to strike and awarded wife attorney's fees and costs, the amounts to be fixed at a later time. No appeal was taken from this order.

Meanwhile, on May 16, 1983, wife had filed a first amended petition for dissolution of marriage, custody of the children, spousal and child support, division of property, attorney's fees and costs. The petition, summons, and a motion for orders pendente lite were duly served on husband. On June 9, 1983, husband made a "special" appearance for the purpose of objecting to the jurisdiction of the court over his person and moved to quash summons. Husband filed a declaration stating he was a Lebanese national currently residing in the UAE; that except for the instant litigation and occasional visits to California in the past, he had had no contact with California.

On July 12, 1983, husband filed yet another motion to enforce custody decrees—not the previously described UAE decree—but decrees of the Sherei Sunnit court in Beirut, Lebanon granted in proceedings commenced by husband in Beirut on October 20, 1982. The Lebanese court initially had issued two interim orders on February 8, 1983, which removed custody of the children from the mother and granted same to the father. Copies of these orders were served on wife's brother in San Jose on March 13, 1983, mailed to her attorney on April 21, 1983, and personally served on wife on May 26, 1983. Under rules of the Lebanese court, however, these orders remained unenforceable pending the exercise or waiver of wife's right to oppose husband's petition. Under these rules, wife had 15 days following personal service on her to file opposition, whereupon the interim orders would be nullified and the issues set at large. She defaulted however, and on June 30, 1983, the Beirut court entered a final decree. Husband filed

these decrees with the Santa Clara County Superior Court Clerk on July 11, 1983. There is no issue relating to their authenticity.

Wife responded to husband's California motion, alleging: she had not been a resident of Lebanon for six years, having resided in Abu Dhabi in the UAE for five years and the United States for one year; that husband was at all times aware of her address and despite that knowledge applied for the interim custody decree from the Beirut court without notice except by publication in Lebanon, which she claimed was inadequate; and husband's prior motions to enforce the child custody decree obtained in the UAE under similar circumstances had been denied.

A hearing was held on July 20, 1983, on all pending issues. On July 22, 1983, the court filed a memorandum decision, and on September 21, 1983, the formal order, described above, which is the subject of these appeals.

### The Order Quashing Service of Summons

Wife contends the trial court erred in deciding it lacked in personam jurisdiction of husband. We disagree.

The wife's petition as amended, sought dissolution of the marriage, division of property, custody of the children, child support, spousal support, attorney's fees and costs. Husband appeared "specially" as to the original and amended petitions on the basis of his lack of minimum contacts with California. His participation in the case involved exclusively the issue of child custody through his efforts to gain recognition and enforcement of his foreign custody decrees as authorized by the UCCJA. The trial court agreed and quashed summons except as to the issue of custody.

This case is virtually indistinguishable from our Supreme Court's decision in *Kumar v. Superior Court* (1982) 32 Cal.3d 689 [186 Cal.Rptr. 772, 652 P.2d 1003] on this issue. In *Kumar,* a mother took her child to California without the consent or knowledge of the child's father who had visitation rights under a divorce decree of the State of New York in which he resided. The father came to California for the sole purpose of exercising his visitation rights and toward that end sought the California court's assistance by recording the New York decree and filing a petition for writ of habeas corpus. When Mrs. Kumar commenced and served a California proceeding to modify and enforce spousal support, child support and to obtain attorney's fees, Mr. Kumar moved to quash service in the child support and fee proceedings for lack of in personam jurisdiction. The trial court denied the father's motion to quash on the ground he had sought and received the California court's assistance in enforcing his visitation rights under the New York

order, and he had thereby made a general appearance submitting himself to the court's jurisdiction. (*Id.*, at p. 693.) The Supreme Court reversed, stating: "Yvonne argues that Jitendra had sufficient contact with California through his use of this state's courts in securing the habeas corpus order, which constituted a general appearance on his part. This court has held that neither execution of a guaranty agreement nor a special appearance in California to move for an order to quash service of a summons for lack of personal jurisdiction was sufficient to establish jurisdiction over a nonresident. (*Sibley* v. *Superior Court* (1976) 16 Cal.3d 442 [128 Cal.Rptr. 34, 546 P.2d 322].) Although *Sibley* distinguishes cases where nonresidents seek significant benefits from the activity in California, it holds that the imposition of jurisdiction should be both constitutionally justified and 'fair.' [¶] Principles of fairness preclude the exercise of personal jurisdiction where connection with the state resulted from an effort to encourage visitation with the noncustodial parent. (*Titus* v. *Superior Court, supra,* 23 Cal.App.3d 792 [100 Cal.Rptr. 477].) [Fn. omitted.] This is especially true in the instant case, where Jitendra was virtually forced into the California court because Yvonne denied him his visitation rights. It would be grossly unfair to allow her now to claim that he thereby established 'minimum contact' sufficient to establish personal jurisdiction." (*Id.*, 32 Cal.3d at pp. 703-704.)

Husband in the instant case likewise appeared "specially" and moved to quash service of summons. The fact that husband also moved thrice to enforce the UAE and the Lebanese decrees, and even subsequently for an order allowing him to visit his children did not subject him to the court's jurisdiction in the dissolution action for in personam awards of support, attorney's fees and costs and division of marital property.

*Husband's Appeal*

On June 20, 1985, while this appeal was pending, wife filed a motion to dismiss husband's appeal on the ground husband had wilfully violated and remained in violation of an order of the trial court. The declaration of wife's attorney in support of the motion discloses that on December 5, 1984, over wife's opposition the trial court granted husband's motion to take and visit with the children in the UAE until January 15, 1985, when he was to return them to San Jose. Husband, however, has refused to return the children as ordered. On May 1, 1985, the trial court, on wife's application, held husband in contempt. However, as stated above the trial court has since declined to exercise subject matter jurisdiction over the issue of child custody and husband has the children with him. The parties now advise us that husband was allowed to purge himself of contempt by the payment of a fine

of $1,000, the full penalty imposed by the court. We must thus deny wife's motion to dismiss husband's appeal and proceed to its merits.

### Enforcement of the Lebanese Decree

■  The trial court declined enforcement of the child custody orders of the Sherei Sunnit Court of Beirut, Lebanon on the ground due process had been denied wife, with the added finding the Islamic court did not appear to hold the "best interests of the child" a central consideration in the determination of custody. The record, in our view, supports neither conclusion.

The enforcement of foreign custody decrees is governed by the Uniform Child Custody Jurisdiction Act, sections 5150-5174 of the Civil Code. (See also Parental Kidnaping Prevention Act of 1980, 28 U.S.C. § 1738A.) The act deals with a state court's determination of subject matter jurisdiction over the custody of children as the issue might arise vis-à-vis another state and with the recognition and enforcement of the decrees of other states.

Civil Code section 5162 provides: "The courts of this state shall recognize and enforce an initial or modification decree of a court of another state which had assumed jurisdiction under statutory provisions substantially in accordance with this title or which was made under factual circumstances meeting the jurisdictional standards of the title, so long as this decree has not been modified in accordance with jurisdictional standards substantially similar to those of this title."

The act, pertinent to the instant case, also has international application. Section 5172 provides: "The general policies of this title extend to the international area. The provisions of this title relating to the recognition and enforcement of custody decrees of other states apply to custody decrees and decrees involving legal institutions similar in nature to custody rendered by appropriate authorities of other nations if reasonable notice and opportunity to be heard were given to all affected persons."

A certified copy of a custody decree of another state which meets the jurisdictional standards of the act may be filed with the clerk of any superior court in California and when so filed must be enforced in like manner as a custody decree of a court of this state. (Civ. Code, § 5164.) It follows that a custody decree of another nation, if it meets the requirements of sections 5162 and 5172, must be given effect in the same manner as a California decree.

The requirements of section 5172 were met. Wife was given reasonable notice of the Lebanese proceedings and a reasonable opportunity to be heard

prior to entry of the June 30, 1983, decree which husband sought to enforce. The record discloses the following procedural chronology: After the California trial court on October 7, 1982, declined to exercise jurisdiction over child custody, husband on October 20, 1982, commenced a divorce and custody proceeding in the Beirut Sherei court on the premise that wife and children were nationals of Lebanon. On February 8, 1983, the Beirut court issued ex parte orders purporting to remove custody of the children from wife. No arguably adequate notice to wife preceded these orders. It is important to note, however, that these orders were interim only. A patently reliable and authentic summary of the Beirut court's procedural rules describes this order as follows: "This order in default shall be interim and will not be enforceable except after its notification to the defendant who may oppose it within a period of 15 days, the court will then nullify the ex parte interim order and will hear both parties and pronounce a final judgment in the case." Thus, while the ex parte order was obtained without due process, the same cannot be said of the final decree. Wife was personally served with a copy of the interim order on May 17, 1983, following personal service on her brother on March 13, 1983, and mailing to her attorney on April 21, 1983. She was also served with notice of her right to file opposition. Yet, she failed to present opposition and the final decrees were entered on June 30, 1983.

The notice and opportunity to be heard in this case were substantially more than provided the party in *Miller* v. *Superior Court* (1978) 22 Cal.3d 923 [151 Cal.Rptr. 6, 587 P.2d 723], wherein our Supreme Court held that due process had been served. In that case, following wife's departure with the children from Australia to the United States, husband obtained an interim ex parte order of custody with a noticed hearing to be held six days later. Notice of the hearing was served on wife's solicitors in Australia who reportedly had no knowledge of her whereabouts. Wife did not appear at the hearing whereupon the Australian court made its order granting custody of the children to husband. Wife was personally notified of this order approximately one week later but took no step to set it aside. Responding to wife's contention that she was not given reasonable notice and opportunity to respond within the meaning of Civil Code section 5172, the court first observed that notice to counsel of record alone was not unreasonable, and then stated: "More importantly, Patricia's contentions are based on a mischaracterization of the Australian orders of 28 July and warrants of 3 August. It is obvious that the order was not intended to effect a permanent change in custody. Rather, it provided a change of custody with a return date. The order contemplated that Harry would have custody pending a hearing and determination whether he or Patricia should have custody. The period contemplated for Harry's custody was short, at most six days if Harry was successful in immediately locating the children. The interim order far from

denying Patricia a right to be heard, is designed to permit Patricia full right to be heard on the custody issue—a right still available to her before the Australian court." (*Id.*, at pp. 928-929.) Similarly wife in the instant case was provided with notice that she had 15 days (cf. 10-day notice requirement in Civ. Code, § 5154, subd. (2)) to appear and answer the petition whereupon the case, from all that appears, would have been set for a fair and objective hearing without regard to the interim ex parte orders. The procedure in that sense is not unlike that prescribed in our own state for temporary ex parte custody orders. (Civ. Code, § 4600.1.) Wife has not shown she was in any way precluded from opposing husband's petition in Lebanon or that she made any effort to respond.

The requirements of section 5162 were also met since it appears the factual circumstances under which the Lebanese decrees were made satisfied the jurisdictional standards of the UCCJA. Section 5152 sets forth several bases for a court's exercise of jurisdiction including the ground that "[i]t is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (ii) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships."

The record discloses, and the Sherei court found, that husband and wife are both Lebanese nationals, that they have a home in Beirut, they both have relatives and friends there and Lebanon is still considered their homeland. It thus appears despite the parties' absence from Lebanon for a number of years due to civil war, the absence was not intended to be permanent, husband, at least, still has a significant connection with Lebanon, and there is available in Lebanon substantial evidence concerning the children's present or future care, protection, training and personal relationships.

The record also shows that the Lebanese court did take the best interests of the children into consideration in determining their custody. The settled statement filed herein by stipulation contains a summary of the proceedings which, under the heading "Custody of the children," sets forth the factors considered in this case.[1]

---

[1] "The Sherei Court has taken into consideration while pronouncing the two orders relating to the custody of the children Fadi and Ruba, several human, educational, social, psychologie [*sic*], material and moral factors for the purpose of insuring the best interest of the two children and their present future and on the long run. Some of these factors are:

"1—Both parents hold the [L]ebanese nationality and they lived in [L]ebanon with their two children the greatest part of the children life [*sic*], except for some intervals of time during which the parents were obliged to leave to Abu-Dhabi for work due to the civil war in Lebanon and were continually with their children in constant contact with their relatives in Lebanon whether to the father's or the mother's side and they still have their home in

Wife contends that custody of the minor children would, in Lebanon, invariably be given to the father. There is no substantial evidence to that effect. Reliance is apparently placed on an opinion[2] communicated from the American Embassy in Abu Dhabi, United Arab Emirates, relative to the custody decree issued in that jurisdiction. Whatever the merits of this somewhat cryptic and unqualified opinion, this appeal is not concerned with

---

Beirut up to this date.

"2—As well as the parents and the two minor children have many friends, neighbours and relatives in Lebanon and they are tied up to their country, their permanent residence, and home state with lots of enviramental [*sic*], traditional, social habits, heritage, moral and cultural links.

"3—In addition, their native tongue is the [A]rabic language, and the two minor children were brought up according to [I]slamic morals and teaching and trained to practice [I]slamic religion along with their studies in school. It is being understood also that the faith of the children is the same faith of the [M]uslim father and they are [M]uslim in accordance with the law.

"4—The court has considered the best interest of the two minor children at a long-range in respect of avoiding their exposal to shredding, loss, spiritual and physical deficiency resulting from the radical change which will take place in case the children are transferred to a world strange to them in all respect without having their friends or relatives with them, and where the customs and traditions are completely and radically different from the customs and traditions to which they have been used to and practicing during their life.

"The court viewed the welfare of the two children with regard to the educational system which differs substantially from which they have been accustomed to with the impossibility of continuing the learning of their [A]rabic language and the impossibility of obtaining the [I]slamic education and exercise of its rituals.

"The court has also considered the interest of the two children with regard to the material side, because the father has properties and work opportunities in Lebanon for the future and plans for the future of the two children to carry on the business activities of the father in the fields of engineering, real estate managements, that will provide for them a progressive future in their country which cannot be provided to them in case they stay in the U.S.A. and in particular that their divorced mother might not be able to provide them proper life with any means of subsistence because she is unemployed and it is quite possible that her stay in the U.S.A. is illegal, shakey [*sic*] and uncontinuous. She is homeless and constantly moving from one place to another and she will not be able to bring them up properly in a strange country where the children have no relatives and are away from the protection, affection and tenderness of their father."

[2]"1. Paras 2 through 4 below respond to Arp's request for our comments on general UAE practice in legal cases involving child custody disputes.

"2. If marriage was conducted under the Sharia law, husband can—on his own declaration—divorce his wife through UAE Sharia court whether she currently us [*sic*] in UAE or in any other country. Divorce certificate, once issued, may simply be mailed to respondant [*sic*]. Even should couple be reunited, husband would be entitled to two more divorces under similar terms.

"3. If Sharia divorce is carried out in UAE, custody of minor children would virtually always be given to their Muslim father. We consider such an award to be an absolute certainty in cases where children have UAE citizen father, and are in possession of UAE passports. On the other hand, children would be permitted to join mother and leave country with prior approval of father.

"4. If the marriage was one contracted between two non-Muslims, it is possible that UAE civil authorities—not Sharia court which would not accept jurisdiction—would recognize custody by mother if recognized religious authority granting divorce so stipulated. This would be likely also in cases of foreign divorces where mother is in possession of court order giving her custody of the children."

the child custody laws of the Sharia court in the UAE but with those of the Sherei court in Beirut, Lebanon. The laws may be entirely similar but no evidence before us says as much. The evidence described above, on the other hand, demonstrates that the best interests of the children were important considerations in the award of custody by the Lebanese court and the criteria were not substantially different from those prescribed in this state. (Cf. Civ. Code, § 4608.) The trial court, under such circumstances, could properly give effect to the Lebanese decree. (Cf. *Hovav* v. *Hovav* (1983) 312 Pa.Super. 305 [458 A.2d 972, 974].)

██ Husband's further contention the trial court lacked authority to award wife attorney's fees and costs is without merit. The trial court's award of fees and costs was made on May 26, 1983, following dismissal of husband's motion to enforce the *UAE* decree. Husband did not appeal from that order. Further, Civil Code section 5157, subdivisions (4) and (5) of the Act provides for an award of attorney's fees and costs upon dismissal of a petition for lack of notice and opportunity to be heard (Civ. Code, § 5153) which was a basis for dismissal of that petition.

### Disposition

1. The trial court's order quashing service of summons on husband is affirmed.

2. The trial court's order awarding wife attorney's fees and costs is affirmed.

3. The trial court's order denying recognition and enforcement of the child custody decrees of the Sherei Sunnit Court, Beirut, Lebanon, is reversed with directions that an order be entered declaring that said decrees are entitled to recognition and enforcement in the courts of this state in accordance with the provisions of section 5162 of the Civil Code.

4. The parties shall bear their own costs and attorney's fees incurred in this appeal.

Brauer, J., and O'Farrell, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.