COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, Haley and Alston
Argued at Alexandria, Virginia


ROBERT CURTIS HARRISON
                                                          OPINION BY
v.       Record No. 1005-10-4                    JUDGE ROSSIE D. ALSTON, JR.
                                                          APRIL 5, 2011
TAMMY MIRIAM HARRISON


                 FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                            Brett A. Kassabian, Judge

            Morgan A. Cox (Marcia M. Maddox; Katharine W. Maddox; The
            Maddox Law Firm, P.C., on briefs), for appellant.

            Laura C. Dove (Betty A. Thompson; Jennifer A. Bradley; Betty A.
            Thompson, Ltd., on brief), for appellee.


        Robert Curtis Harrison (husband) appeals from the trial court's determination that it

lacked *in personam* jurisdiction over Tammy Miriam Harrison (wife) and thus could not

adjudicate the personal and property rights arising from husband's and wife's marriage.  On

appeal, husband asserts that the trial court erred by:  1) denying *in personam* jurisdiction over

wife based upon Code § 20-146.8; 2) denying *in personam* jurisdiction over wife based upon

Code § 8.01-328.1(A)(9); 3) refusing to find wife guilty of constructive fraud in determining

the establishment of a matrimonial domicile in Virginia; 4) assigning greater weight to the

credibility and evidence of wife over that of husband; and 5) sustaining a relevance objection

barring presentation of testimony regarding wife's alleged extramarital relationship.  We

disagree with husband on each of the issues raised and, for the reasons that follow, affirm the

ruling of the trial court.

I.  Background

Husband and wife were married on March 18, 2000, in Colorado.  In 2001 and 2005, respectively, husband and wife had two daughters.  In 2004, the parties relocated to Brussels, Belgium, for husband's work.  Subsequently, the parties began experiencing marital difficulties.  In the spring of 2008, husband learned he would have to relocate to Virginia for his employment.  As a result of their marital difficulties, wife decided she would not relocate to Virginia with husband, but rather would remain in Belgium with the children.  In May 2008, the parties purchased a home in Tervuren, Belgium.

In June 2008, husband, wife, and their children traveled to Virginia to look for a house.[1]  Even during this endeavor, the parties continued to experience marital difficulties.  Ultimately, in July 2008, wife and the children moved into the Tervuren residence.  On July 2, 2008, husband sent an email to a friend in which he discussed his marital problems, stating,

> I am less optimistic now for [wife] and I [sic] than before.  [Wife] has refused all requests for joint marriage counseling.  She has also taken to lying to me and about me as necessary to rationalize any issue or challenge as to why she shouldn't squat in Belgium with the kids . . . .
>      . . . I am near [the] breaking point where I will need to actively oppose her citizenship request and sue for divorce . . . .

At the end of July 2008, the parties' children were registered to attend the International Montessori School Tervuren for the 2008-2009 academic school year.  Husband appeared before the local government authority in Belgium and provided his written permission for the parties' children to be registered to reside with wife in Belgium.

Husband relocated to Virginia in August 2008.  Wife and the children also flew to Virginia at the same time to assist husband in finding a home and to assist husband during his treatment for a medical condition.  Wife and husband both met with a realtor.  A car was

---

[1] The parties dispute whether the purpose of the trip was to purchase a home in Virginia for the family or to purchase a home for husband.

purchased, and wife arranged for car insurance for the parties, on which both husband and wife were named as insured. On August 28, 2008, wife and the children returned to Belgium, and husband signed a contract to purchase a residence in Virginia. Wife did not sign any documents relating to the purchase of the Virginia residence, and she was not named as an owner on the deed. Husband testified that, after he purchased the house, wife shipped items from Belgium to the Virginia residence.

In October 2008 and December 2008, wife and the children returned to Virginia to visit husband. In January 2009, wife informed husband that she had filed a suit for divorce in Belgium. In response, husband communicated via email to his marriage counselor that wife had advised him in early January 2009 that she did not want to move to Virginia and was preparing a custody agreement where he could have visitation during the summer and on holidays. In addition, husband paid consultation fees to two different divorce attorneys in early February 2009. Wife and the children again visited husband in Virginia in February 2009.

In May 2009, wife purchased round-trip tickets for herself and the children to travel to Virginia on June 26, 2009, with a return to Belgium on August 23, 2009. Wife also purchased a round-trip ticket for herself to fly back to Belgium on July 4, 2009, with a return date to Virginia of August 15, 2009, so she could retrieve the children.

Wife and the children arrived in Virginia on June 26, 2009. Subsequently, as per her original plan, wife returned to Belgium on July 4, 2009. On the same day, husband sent wife an email advising her that he would not return the children to her, and on July 28, 2009, husband filed a complaint for divorce and an emergency custody motion in the Circuit Court of Fairfax County.

Husband's emergency custody motion was set for hearing on August 14, 2009. On August 1, 2009, wife was served at the Tervuren residence with husband's complaint for divorce,

civil summons, and the emergency custody motion. Wife then purchased a one-way ticket to come to Virginia on August 12, 2009, to participate in the custody hearing.

The custody hearing was postponed until August 20, 2009. At the August 2009 hearing, the circuit court found that Belgium was the "home state" of the parties' children and thus declined to exercise jurisdiction pursuant to Code § 20-146.12.[2] Immediately following the hearing, wife asked husband to return the children to her so she could take them back to Belgium on August 23, 2009. Husband refused to return the children, claiming he wished to take them to visit their grandfather in Texas. Ultimately, husband and wife agreed that husband would return the children to wife on August 25, 2009.

On August 21, 2009, wife filed a motion in the Circuit Court of Fairfax County (trial court) asking the court to decline to adjudicate issues related to the parties' divorce, alleging that it lacked *in personam* jurisdiction over wife.

On August 25, 2009, husband returned the children to wife as agreed. When wife met husband to receive the children, she was served with husband's complaint for divorce. Wife then returned with the children to Belgium.

On April 1, 2010, the trial court held a hearing on wife's claim that the court did not have *in personam* jurisdiction over her. At the hearing, husband attempted to question wife about, among other things, her alleged romantic relationship with another man in Belgium. According to husband, this evidence tended to prove wife's motivation for her actions. The trial court sustained wife's objection to this line of questioning on relevance grounds.

The trial court issued its ruling on April 7, 2010, holding that it lacked *in personam* jurisdiction over wife, finding Code § 20-146.8(A) controlled, thus rendering wife immune from service. In making this determination, the trial court found that

---

[2] This determination is not at issue in the instant appeal.

- 4 -

[a]lthough [wife] had originally planned to retrieve her children and return to Belgium with them after allowing visitation with [husband], . . . the sole reason [wife] returned on August 12th, 2009[,] from Brussels to Virginia was to physically appear and contest the emergency custody petition in Fairfax which she, in fact, did.

The trial court also questioned husband's refusal to return the children to wife after the custody hearing, finding,

[Husband] testified that his sole reason was so that the children could spend time with their paternal grandparents who were ill. Regardless of his rationale, his unilateral decision and the convenient timing of it, he put [wife] in a Hobson's choice of either returning to Belgium without the children or remaining until she could convince [husband] to relinquish them.

The trial court also held that it lacked *in personam* jurisdiction over wife under Code § 8.01-328.1(A)(9). In so holding, the trial court stated that it credited the testimony of wife regarding her matrimonial domicile. It also made five specific factual findings:

[O]ne, that the Fairfax Station residence was in [husband's] name only and that [wife] never signed any offers or letters of ratification and was, in fact, in Belgium when the contract was ratified. Two, that [wife] and the children moved into the Belgium residence in June of 2008. [Husband] came to the United States. Three, the children were enrolled for the 2008-2009 academic year in Belgium[.] Four, . . . [husband] signed a statement and in his own writing grant[ed] permission for the children to be registered and reside in Belgium. Five, that [wife] filed suit for divorce in Brussels in January of 2009 and said that she told [husband]. He denied having any knowledge of that. However . . . it's clear that he did pay consultation fees to two different divorce attorneys in early February of 2009. And it's also clear that, in late January 2009, he communicated with his counselor that his wife had advised in early January 2009 that she did not want to move to Virginia and was preparing a custody agreement where he could have visitation in the summer and the holidays.
     Finally, there was an e-mail that was introduced that [husband] communicated with his friend . . . in July of 2008 that supports [wife's] testimony that, in the summer of 2008, she was not happy in the marriage and intended to remain in Belgium with the children.

After a denial of husband's motion for reconsideration, this appeal followed.

II.  Analysis

A.  *In Personam* Jurisdiction

Husband contends that the trial court erred in holding that it lacked *in personam* jurisdiction over wife under Code § 20-146.8 and Code § 8.01-328.1(A)(9).  In arguing that the trial court erred in finding that it did not have *in personam* jurisdiction over wife under Code § 8.01-328.1(A)(9), husband further alleges that the trial court erred in assigning greater weight to wife's testimony than husband's and in failing to find a "constructive" matrimonial domicile in Virginia.

1.  Code § 20-146.8

The trial court held that it lacked *in personam* jurisdiction over wife, despite personal service upon wife in Virginia, under Code § 20-146.8.  Code § 20-146.8(A) provides,

> A party to a child custody proceeding, including a modification
> proceeding, or a petitioner or respondent in a proceeding to enforce
> or register a child custody determination is not subject to personal
> jurisdiction in this Commonwealth for another proceeding or
> purpose solely by reason of having participated, or having been
> physically present for the purpose of participating, in the
> proceeding.

Critical to the resolution of this issue are the dates of several significant events in the parties' relationship and the trial court's reliance on these dates in its determinations.  In this regard, the trial court found that wife returned to Virginia on August 12, 2009, "for the sole reason . . . to physically appear and contest the emergency custody petition."  The trial court placed no significance on wife's presence in Virginia on August 25, 2009, when she was served with process, except that husband and wife agreed the children would be returned to wife on that date.[3]  Upon appellate review, these factual findings "are accorded great deference and [the trial

---

[3] We reject husband's argument that the trial court based its decision on an improper "inference based on an inference" that husband purposefully delayed wife's return with the children to Belgium.  The trial court relied upon no such inference in reaching its decision.

- 6 -

court's] judgment will not be set aside unless plainly wrong or without evidence to support it." Stroud v. Stroud, 54 Va. App. 231, 236, 677 S.E.2d 629, 631 (2009).

Husband argues that because wife intended to come to Virginia from August 15 to August 23, 2009, before learning of the child custody hearing, she could not have been in Virginia solely for the purpose of participating in the child custody hearing. Furthermore, husband argues that because the child custody hearing concluded on August 20, 2009, wife was not in Virginia on August 25, 2009, solely for the purpose of participating in the child custody hearing.

We disagree with husband's contention that, because wife had prior plans to come to Virginia, she did not come to Virginia on August 12, 2009, solely for the reason of participating in the child custody proceeding. Wife originally planned to come to Virginia on August 15, 2009; however, after she received notice of the child custody proceeding, she changed her plans and returned to Virginia on August 12, 2009. Wife's reasons for coming to Virginia on August 15, 2009, are irrelevant to the resolution of the appeal; the fact that wife returned to Virginia three days earlier than she originally planned supports the trial court's finding that she came to Virginia solely for the reason of participating in the child custody hearing. This factual determination is to be accorded great weight under our jurisprudence and from this record. We cannot say this finding is without evidence to support it.

Furthermore, we disagree with husband that wife's decision to stay in Virginia until August 25, 2009, to retrieve her children renders the exemption from service found in Code § 20-146.8 inapplicable. Husband argues that, because wife remained in Virginia to retrieve her

---

Rather, the trial court stated specifically that it reached its holding "*[r]egardless* of [husband's] rationale" for refusing to return the children to wife at the conclusion of the child custody hearing. (Emphasis added).

- 7 -

children, she was not in Virginia "solely" by reason of participating in the child custody proceeding.

We find no Virginia case law interpreting Code § 20-146.8. However, we note that this statute provides immunity from service for those in the Commonwealth "solely by reason of *having participated*, or *having been* physically present for the purpose of participating, in the proceeding." Code § 20-146.8(A) (emphasis added). "'In construing a statute, we must apply its plain meaning, and we are not free to add [to] language, nor to ignore language, contained in statutes.'" Purce v. Patterson, 275 Va. 190, 194, 654 S.E.2d 885, 886 (2008) (quoting BBF, Inc. v. Alstom Power, Inc., 274 Va. 326, 331, 645 S.E.2d 467, 469 (2007) (alteration in original)). This use of the past tense in the statutory language of Code § 20-146.8(A) suggests that the legislature intended the protections of the statute to extend after the time of the child custody hearing itself. See Phillips v. Commonwealth, 56 Va. App. 526, 537, 694 S.E.2d 805, 810 (2010) (discussing the use of the past tense in Code § 18.2-46.1 to determine the meaning of the statutory definition of "criminal street gang"). Because wife's return to Virginia was predicated upon the child custody hearing, we hold that the record supports the conclusion that wife remained in Virginia after the hearing solely by reason of having been physically present for the purpose of participating in the proceeding and therefore is entitled to the immunity protections provided by Code § 20-146.8.

In reaching this holding, we find precedent from other jurisdictions persuasive. In *In re* Marriage of Malak, 227 Cal. Rptr. 841, 843 (Cal. Ct. App. 1986), a father was personally served with a summons for a divorce while visiting California "apparently to find and visit [his] children." The father and mother, both Lebanese citizens, were living with the children in the United Arab Emirates when the mother took the children to reside in California without the father's consent. Id. The California Court of Appeal held that the trial court did not err in

determining that it lacked *in personam* jurisdiction over the father. Id. at 845. Although the

California Court of Appeal reached its conclusion based on an analysis of the father's lack of

"minimum contacts" with California, and not in reliance on the language of California Family

Code § 3409(a),[4] nonetheless, we find the analysis persuasive in interpreting Code § 20-146.8, as

the facts of Malak and the policy considerations underlying the resolution of the jurisdictional

issues are very similar to those of the instant case. Thus, we hold that the trial court did not err

in holding that it lacked *in personam* jurisdiction over wife, despite personal service upon wife in

Virginia, under Code § 20-146.8.

2. Code § 8.01-328.1(A)(9)

The trial court also held Code § 8.01-328.1(A)(9) did not confer *in personam* jurisdiction

over wife. Code § 8.01-328.1(A)(9) states,

> A court may exercise personal jurisdiction over a person, who
> acts directly or by an agent, as to a cause of action arising from the
> person's:
>
>      *     *     *     *     *     *     *
>
> Having maintained within this Commonwealth a matrimonial
> domicile at the time of separation of the parties upon which
> grounds for divorce or separate maintenance is based, or at the
> time a cause of action arose for divorce or separate maintenance or
> at the time of commencement of such suit, if the other party to the
> matrimonial relationship resides herein . . . .

Husband argues that the trial court erred in finding that wife did not maintain a

matrimonial domicile in Virginia and, in reaching this conclusion, assigning greater weight to

---

[4] Cal. Fam. Code § 3409(a) provides:

> A party to a child custody proceeding, including a modification
> proceeding, or a petitioner or respondent in a proceeding to enforce
> or register a child custody determination, is not subject to personal
> jurisdiction in this state for another proceeding or purpose solely
> by reason of having participated, or of having been physically
> present for the purpose of participating, in the proceeding.

wife's testimony than husband's testimony.  In the alternative, husband argues that the trial court erred in finding that Code § 8.01-328.1(A)(9) did not confer *in personam* jurisdiction because wife maintained a "constructive matrimonial domicile" in Virginia.

We turn first to the question of whether wife maintained an actual matrimonial domicile in Virginia.  The jurisprudence of this Commonwealth instructs that "the existence or non-existence of a domicile in a given locality is a mixed question of law and fact."  Talley v. Commonwealth, 127 Va. 516, 522, 103 S.E. 612, 614 (1920).  Moreover, this Court "give[s] great deference to the trial court's factual findings and view[s] the facts in the light most favorable to the prevailing party below, in order to review the trial court's application of the law to the facts."  Blackson v. Blackson, 40 Va. App. 507, 517, 579 S.E.2d 704, 709 (2003).

It is well established that "'domicile is defined to be a residence at a particular place, accompanied with positive or presumptive proof of an intention to remain there for an unlimited time.'"  Id. (quoting Long v. Ryan, 71 Va. 718, 719 (1878) (emphasis omitted)).[5]  "In other words, [domicile consists in] the fact of residence and the intent to remain . . . ."  Id. at 520, 579 S.E.2d at 710.

"Proof of the intention [to remain] may be positive or presumptive."  State-Planters Bank & Trust Co. v. Commonwealth, 174 Va. 289, 295, 6 S.E.2d 629, 631 (1940).

> "Intent is to be inferred from declarations and from conduct.  And it is a well settled rule that evidence of expressed intent has no controlling weight if such an intent is inconsistent with the acts and general conduct of the person.  In such a case, acts and conduct showing intent outweigh his declarations or expressions of intent."

Fox v. Commonwealth, 207 Va. 701, 705, 152 S.E.2d 60, 64 (1967) (quoting Guilfoil v. Hayes, 169 Va. 548, 556, 194 S.E. 804, 807 (1938)).

---

[5] Black's Law Dictionary defines "matrimonial domicile" as "[a] domicile that a husband and wife, as a married couple, have established as their home."  Black's Law Dictionary 524 (8th ed. 2004).

Indeed, one may change domiciles; however, "'[m]ere absence from a fixed home, however long continued, cannot work the change. There must be the [intention] to change the prior domicile for another . . . . Until the new domicile is acquired, the old one remains . . . .'" Blackson, 40 Va. App. at 517-18, 579 S.E.2d at 709 (quoting Cooper's Adm'r v. Commonwealth, 121 Va. 338, 347, 93 S.E. 680, 682 (1917)). Thus, "[t]o effect a change of domicile, there must be an actual abandonment of the old domicile, coupled with an intent not to return to it, and also a new domicile acquired at another place, which can only be done by the union of intent and personal presence." Talley, 127 Va. at 520, 103 S.E. at 614.

Whether wife was domiciled in Virginia at the time of separation or commencement of the suit for divorce on July 28, 2009, as required by Code § 8.01-328.1(A)(9), depends on whether wife resided in Virginia *with the intent to permanently remain there*. Husband argues wife's intent to be domiciled in Virginia was shown by her various trips to Virginia, the purchase of a home and car in Virginia, the purchase of car insurance in Virginia with wife's name on the policy, wife's interactions with the realtor in Virginia, and the shipping of items from Belgium to the Virginia home.

Much of the evidence upon which husband relies to support his claims on appeal is based on husband's testimony, which the trial court found not to be credible. The trial court specifically credited wife's testimony over husband's. "Determining the credibility of witnesses who give conflicting accounts is within the exclusive province of the [fact finder, who] has the unique opportunity to observe the demeanor of the witnesses as they testify." Lea v. Commonwealth, 16 Va. App. 300, 304, 429 S.E.2d 477, 479 (1993) (citations omitted). "It is well established that the trier of fact . . . has the discretion to accept or reject any of the witness' testimony." Street v. Street, 25 Va. App. 380, 387, 488 S.E.2d 665, 668 (1997) (*en banc*).

The trial court found that: 1) Wife testified that she never maintained a matrimonial domicile in Virginia; 2) the Virginia residence was in husband's name only, and wife "never signed any offers or letters of ratification and was, in fact, in Belgium when the contract was ratified"; 3) wife and the children moved into the Belgium residence in June 2008, while husband came to the United States; 4) the children were enrolled in school for the 2008-2009 academic year in Belgium; 5) husband "signed a statement . . . in his own writing granting permission for the children to be registered and reside in Belgium"; 6) wife filed suit for divorce in Brussels in January 2009 and told husband; and 7) an email from husband to a friend in July 2008 supported wife's testimony that "in the summer of 2008, she was not happy in the marriage and intended to remain in Belgium with the children." Furthermore, the trial court found that the evidence supported wife's testimony that "in the summer of 2008, this marriage was over when [husband] left Brussels for the United States and the children and [wife] remained. All other visits were just that . . . ."

These factual findings are supported by substantial evidence in the record and support the trial court's finding that wife never intended to maintain a matrimonial domicile in Virginia. Although some of wife's conduct may have conflicted with her stated intention to reside permanently in Belgium, wife's general conduct was sufficient to prove her intent to remain permanently in Belgium, not Virginia. "When the evidence [of intended domicile] is conflicting, the opposing facts must be balanced one against the other. Slight circumstances must often decide the question. The solution of the question depends upon the preponderance of the evidence in favor of one place or the other." State-Planters Bank & Trust Co., 174 Va. at 295, 6 S.E.2d at 631. In this case, there was ample evidence that wife intended to remain in Belgium and did not intend to reside in Virginia. Thus, we hold that the trial court did not err in holding

that there was no actual matrimonial domicile upon which *in personam* jurisdiction could be based.

We turn next to the question of whether wife established a "constructive matrimonial domicile" in Virginia, subjecting her to *in personam* jurisdiction under Code § 8.01-328.1(A)(9). Husband argues that wife "defrauded" husband by claiming she would remain married to him and move to Virginia, while secretly intending to remain in Belgium and seek a divorce. Even if the facts, as found by the trial court, supported husband's argument, we find no Virginia precedent adopting the theory of "constructive matrimonial domicile," and we decline to adopt it in this case. Therefore, we hold that the trial court did not err in rejecting *in personam* jurisdiction over wife based on a theory of constructive matrimonial domicile.

### B. Testimony Regarding Wife's Alleged Extramarital Relationship

Husband's final assignment of error alleges that the trial court erred in sustaining a relevance objection barring presentation of testimony regarding wife's alleged extramarital relationship.

"The admissibility of evidence is a matter of law to be determined by the trial judge." Evans-Smith v. Commonwealth, 5 Va. App. 188, 196, 361 S.E.2d 436, 441 (1987) (citing Gottlieb v. Commonwealth, 126 Va. 807, 812, 101 S.E. 872, 874 (1920)). "Ultimately, '[t]he admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion.'" Cousins v. Commonwealth, 56 Va. App. 257, 272, 693 S.E.2d 283, 290 (2010) (quoting Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988)).

"'Evidence is admissible if it is both relevant and material,' and it is inadmissible if it fails to satisfy either of these criteria." Calhoun v. Commonwealth, 35 Va. App. 506, 509, 546 S.E.2d 239, 241 (2001) (quoting Peeples v. Commonwealth, 28 Va. App. 360, 365, 504 S.E.2d

870, 873 (1998)). "Evidence is relevant if it has any logical tendency, however slight, to establish a fact at issue in the case. Evidence is material if it relates to a matter properly at issue." Id. (internal quotation marks omitted) (emphasis omitted); see also C. Friend, The Law of Evidence in Virginia § 134 (2d ed. 1983).

In the instant case, husband, in furtherance of his theory of constructive matrimonial domicile, attempted to elicit testimony regarding wife's alleged extramarital affair purportedly to establish wife's intent to deceive husband regarding her desire to separate and remain in Belgium. Because the trial court rejected husband's theory of constructive matrimonial domicile, the testimony was neither material, nor relevant, i.e., it did not relate to a matter properly at issue before the trial court nor have any logical tendency to establish a fact at issue in the case. As a result, the trial court did not err in sustaining a relevance objection to the testimony.

## C. Attorney's Fees and Costs

Husband seeks an award of attorney's fees and costs in this appeal. Because wife prevailed in this appeal, we deny husband's request for attorney's fees and costs. See Rogers v. Rogers, 51 Va. App. 261, 274, 656 S.E.2d 436, 442 (2008).

## III. Conclusion

For these reasons, we affirm the holdings of the trial court.

Affirmed.